IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ADALBERTO FLORES-HARO et al.,**

        Plaintiffs,

        v.

**STEPHEN SLADE et al.,**

        Defendants.

Case No. 3:12-cv-01616-MO

OPINION AND ORDER

**MOSMAN, J.**,

*Cessante ratione legis, cessat ipsa lex.* When the reason for the law ceases to exist, so, effectively, does the law. The usual setting for this maxim is regulatory law: when, for example, there is a reduced speed limit near a school, then if the school ceases to be a school the lower speed limit should end. But unless we are talking about a bright line prophylactic rule like *Miranda*, this same principle applies to case law.

In this case, the law involved is known as the *Heck* doctrine, from *Heck v. Humphrey*, 512 U.S. 477 (1994). The rule in *Heck* is if "a [civil] judgment in favor of the plaintiff would necessarily imply the invalidity of his [prior] conviction or sentence," the 1983 action seeking that judgment must be dismissed. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The fundamental question presented here is whether the *Heck* doctrine should bar the 1983 claim brought by this plaintiff, where there is a misdemeanor conviction arising out of the same facts, but where the rationale for *Heck* is missing.

Our facts involve the police shooting the plaintiff when he came out on his porch late at night to see why they were in his yard, which was being used to stage a SWAT entry next door. In the aftermath of the shooting, Plaintiff, ironically, was charged with, among other things,

menacing, disorderly conduct in the second degree, and three counts of recklessly endangering another person. He eventually pleaded no contest in state court to menacing and one count of reckless endangerment. He now brings claims under federal law for an excessive force violation under § 1983.[1] Although this case is, superficially, a paradigmatic case for the *Heck* doctrine, further analysis shows that none of the reasons for the doctrine is present here. I therefore hold that *Heck* presents no bar to the federal claim, and DENY Defendant's motion.

## BACKGROUND

On the evening of March 13, 2012, officers from Washington County and the cities of Hillsboro and Portland had started to execute a "high risk" search and arrest warrant in Columbia Villa, a neighborhood that had a high incidence of drug and gang related activity. Defendants Deputy McLeod and Officer Slade were part of the perimeter team helping to execute the warrant. Plaintiffs' home is next door to the target address for the warrant and the officers from the team were in and around his area. When the operation started, two officers, non-parties, went in to the Plaintiffs' backyard leaving only after Plaintiffs' dogs began to bark. Other officers, also non-parties, moved through an alleyway between Plaintiffs' home and an adjacent home. At no point had any officers or departments asked for permission to be on Plaintiffs' property or alerted Plaintiffs in any way as to the presence of the police.

The family, unaware of the presence of police, became scared of potential intruders. Plaintiff Granado-Milan, Mr. Flores-Haro's wife, heard the dogs' barks and went downstairs to investigate what had caused the disturbance. She saw an unfamiliar person through the blinds, heard a noise by the fence, and alerted her husband there was someone in the backyard. Mr. Flores-Haro saw a shadowy figure running toward the front yard and went outside to confront

---

[1] Plaintiff Flores-Haro and his family also bring claims under state law for negligence, battery, and intentional infliction of emotional distress. I have previously ruled, at oral argument, the state law claims can go to trial under my supplemental jurisdiction.

2 – ORDER AND OPINION

the intruder. Upon exiting his house, Mr. Flores-Haro saw more shadowy figures across from a common path in the housing area. Hoping to intimidate whomever was circling his house, Mr. Flores-Haro yelled inside to his son to get Mr. Flores-Haro's gun, a .44 caliber Llama handgun. When his son could not find the gun, Mr. Flores-Haro went inside to get it himself. After retrieving the gun, Mr. Flores-Haro took one or two steps past his front door with the gun in his hand. He was shot immediately and multiple times. According to Defendants, prior to the shooting, the officers had identified themselves as police and told Mr. Flores-Haro multiple times to "get back inside." Plaintiffs contend the shooting was without warning, and the officers never identified themselves. Plaintiffs and Defendants also dispute whether Mr. Flores-Haro's weapon was pointed at an angle to the ground or directly at the officers.

Upon being shot, Mr. Flores-Haro sought protection inside his home, stating he was terrified whoever shot him would try to hurt his family. Ms. Granado-Milan locked the door. The children, now awake, were downstairs screaming, and Mr. Flores-Haro, also screaming, lay on the ground bleeding and trying to keep his insides from spilling out of his stomach.

While the police marched the rest of the family out at gunpoint, over their father's bleeding body, Mr. Flores-Haro was unconscious. He woke up when the police officers started to drag him by the arms across the ground outside of his home in front of his family. When he started to scream in pain, he states he was told to shut up and pushed again to the ground. While this was happening, Ms. Granado-Milan—still unaware the potential intruders and the officers were one and the same—asked the officers if they caught the person who had shot her husband. Mr. Flores-Haro was in a coma for almost two weeks. He was left with permanent injuries and substantial physical limitations.

After the incident, Defendants Slade and McLeod reported to the group that they had been fired upon. No casings or bullets from Mr. Flores-Haro were recovered from the scene after an investigation.

Mr. Flores-Haro was charged with possession of methamphetamine, menacing, disorderly conduct in the second degree, and three counts of recklessly endangering another person. On October 24, 2014, he pleaded no contest in state court to menacing and to one count of reckless endangerment. At his sentencing, Judge Jones explained the importance of a no contest plea stating "What you're telling me is, 'I'm not going to fight . . . at least not in this courtroom . . . in another courtroom there is going to be a fight about what happened." Judge Jones reiterated "You will simply have said, 'I'm not fighting' – or at least not fighting here in this courtroom today." Judge Jones noted "this clears up one small part of it, but doesn't really resolve the issues." Plaintiff Flores-Haro received 24-month probation on each count and 80 hours of community service for the menacing charge. *Id.* at 13-15. He and his family now bring claims under federal law for an excessive force violation under § 1983 and under state law for negligence, battery, and intentional infliction of emotional distress.

## **Legal Standard**

The basic *Heck* question is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Under *Heck,* "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).

**Discussion**

As the impact of the *Heck* doctrine has grown, so too have the rationales which support it. The Supreme Court, in establishing the *Heck* doctrine, focused almost exclusively on the concern of 1983 actions becoming an end run around the procedural requirements of a habeas petition. *Heck v. Humphrey,* 512 U.S. 477, 486 (1994). After the Court's creation of the *Heck* doctrine, subsequent cases rounded out the analysis by providing complementary rationales for the prohibitions outlined in *Heck.* Now, in addition to the concerns of the Supreme Court surrounding habeas, the *Heck* doctrine protects comity, federalism, and finality and avoids parallel litigation. *Wilkinson v. Dotson*, 544 U.S. 74, 84 (2005); *Osborne v. Dist. Attorney's Office for Third Judicial Dist.*, 423 F.3d 1050, 1054 (9th Cir. 2005). The circumstances of this case obviate these rationales.

   a. Comity and Federalism

The comity and federalism concerns which traditionally underpin *Heck* are absent here. The principles of comity and federalism suggest that when a state court has acted, a federal court should generally not act in opposition. See COMITY, Black's Law Dictionary (10th ed. 2014); *Younger v. Harris,* 401 U.S. 37, 43–44 (1971). In its application to *Heck,* this reasoning assumes states would oppose any federal civil action after a state conviction. Here, however, the state court made it clear that it expected a federal case to follow and question the same events. At sentencing, the judge's statements show the Oregon state court judge understood Mr. Flores-Haro's plea to allow a later civil action rooted in the same factual basis as his criminal conviction. Judge Jones explained:

> If you pled guilty, you would be saying to me, "I did these things, I admit it." But you're not saying that. Because when you plead no contest, you're not admitting you did anything, but what are telling me is that I can look over at Mr. Ramras, who's the prosecutor, and say as to these two charges, the menacing and the

> reckless endangering, "What's the State's version, the government's version of what happened?" And he's going to tell me.
>
> And I'm not going to ask you whether you agree with him or not, because when you plead no contest, what you're telling me is, "I'm not going to fight about what he says"—at least not in this courtroom. Now, I understand that in another courtroom there is going to be a fight about what happened. But here, no fight.
>
> He's going to tell me *what they believe, what they think happened,* and because you're not contesting it, not fighting it, I'm going to take his word for the truth. I'm going to find you guilty of these two charges. But in doing that, I will not have heard you say you did it or agree that you did it. You will simply have said, 'I'm not fighting!'—or at least not fighting here in this courtroom today."

(Sherman Decl. [109] Ex. 1 at 2, 5:6–6:6). The Judge made these comments with the knowledge that this federal court already had civil claims pending before it. Dec. of Mark Sherman, Ex. 1 at 4 (noting the "[Federal Judge] is eager to learn that we've resolved this"). It would be maladroit to determine comity bars a federal case in the face of the state court judge's statement that it does not.

Indeed, comity may urge that *Heck* not be applied. Comity instructs that I recognize the state court's actions out of deference, mutuality, and respect. This requires that I recognize and respect the position of the state court which urged a trial at the federal level. Federalism, typically concerned with federal interference of the legitimate activities of the state, is completely nullified here where the state court has given its endorsement to proceed at the federal level and to resolve the factual disputes regarding what happened. Applying *Heck* would respect neither comity nor federalism in this case.

    b. <u>Finality</u>

There is nothing to be gained in terms of finality by dismissing the 1983 claim because the state law battery claim will raise the same questions as the 1983 claim. The value of finality is in avoiding reconsideration of facts and issues that have already been decided. First, it is uncertain that a no contest plea, like Mr. Flores-Haro's, decides facts

6 – ORDER AND OPINION

in a way that can be applied to a second proceeding. Second, to whatever extent a no contest plea decides facts and issues, those facts and issues will be reexamined in this case by consideration of the state law battery claim. In contesting the battery claim, both sides will offer evidence on if and when the police identified themselves. They will dispute at what angle Mr. Flores-Haro held his gun and whether he fired any shots from that gun. The jury will be asked to decide what situation the officers confronted and whether their actions were appropriate. In short, the facts and issues the 1983 claim may call into question are nearly identical to the ones that state battery claim will assuredly call into question. If the finality of the criminal judgment is to be undermined, the battery claim will do so as surely as the federal claim. There is no incremental increase in the damage to finality by allowing the federal claim to go forward. Because the state battery claim will go forward, applying *Heck* to bar the federal claim would not protect the finality of the state criminal judgment.

      c.   Parallel Litigation and Consistency

The Supreme Court created the *Heck* doctrine, in part, to avoid "parallel litigation [and preclude] the possibility of the claimant succeeding in the tort action . . . in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Heck*, 512 U.S. at 484 (internal citations omitted). However, as with finality, this rationale is mooted under the circumstances of this case. The state law claims, analytically similar and factually identical to the Section 1983 claim, will go forward. Civil litigation on the same issues and facts presented in the criminal conviction will occur with or without the potentially *Heck* barred federal law claim. Withholding the federal claim does not prevent parallel litigation in this case and does not eradicate the potential for inconsistent

judgments. Any incidental burden in allowing the federal claim to go forward is *de minimus*. Barring the federal claim by blindly applying the language of *Heck* would achieve nothing if the purpose is to avoid parallel litigation and promote consistency.

    d.   No Contest Plea

The juxtaposition between Plaintiff's no contest plea and the reasoning behind *Heck* presents another problem in applying *Heck* to this case. While courts have applied *Heck* to no contest pleas, district courts in the Ninth Circuit have done so with "some confusion." *Cooley v. City of Vallejo*, 2014 WL 3749369, at *4 (E.D. Cal. July 29, 2014) *report and recommendation adopted*, 2014 WL 4368141 (E.D. Cal. Sept. 2, 2014). Historically, the Ninth Circuit had applied *Heck* to no contest pleas with little analysis of the differences between a no contest plea and a guilty plea. *Szajer v. City of Los Angeles*, 632 F.3d 607, 612 (9th Cir. 2011); *Radwan v. Cty. of Orange,* 519 F. App'x 490, 490-91 (9th Cir. 2013) ("We have repeatedly found *Heck* to bar § 1983 claims, even where the plaintiff's prior convictions were the result of guilty or no contest pleas.") More recently, however, the Ninth Circuit indicated *Heck* was not to be automatically applied to no contest pleas. *Lockett v. Ericson*, 656 F.3d 892, 896 (9th Cir. 2011).

In *Lockett,* the plaintiff was challenging an illegal search of his home. The Ninth Circuit held *Heck* did not apply because Lockett "was not tried, and no evidence was introduced against him." *Id.* at 897. His conviction "derive[d] from [his] plea[ ], not from [a] verdict[ ] obtained with supposedly illegal evidence." *Id.* Other courts have remarked that in *Lockett*, the "Ninth Circuit appears to have broadly held that a no contest plea to criminal charges does not lead to a *Heck* bar of a subsequent civil rights action." *Cooley* 2014 WL 3749369 at *3; *see also Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 197 (4th Cir. 2015); *Easterling v. Moeller,* 334 Fed. Appx. 22, 24 (7th Cir. 2009). The Ninth Circuit itself has been more cautious, declaring "under certain circumstances a plaintiff's § 1983 claim is not *Heck*-barred despite the existence of an

8 – ORDER AND OPINION

outstanding criminal conviction against him." *Jackson v. Barnes*, 749 F.3d 755, 760 (9th Cir. 2014) *cert. denied*, 135 S. Ct. 980 (2015) (applying *Lockett* to a guilty plea). The state of the Ninth Circuit's position on the application of *Heck* to no contest pleas is puzzling.

The confusion surrounding *Heck* is understandable given *Heck* and no contest pleas are an uneasy intersection, at best. The traditional virtue of a no contest, or nolo, plea in contrast to a guilty plea, is to allow the criminal defendant to challenge the facts of his conviction in a subsequent civil action:

> "The close analogy which exists between the pleas of nolo contendere and guilty in their effect in the case in which they are interposed does not extend to the consequences of the two pleas outside the particular case. It is in this sphere that. . .the particular attractiveness of the plea of nolo contendere for the defendant lies. The fundamental rule, as unanimously accepted by all the courts as a rule expressing the effect of the plea in the case, is that while the plea of nolo contendere may be followed by a sentence, it does not establish the fact of guilt for any other purpose than that of the case to which it applies. The difference between it and a plea of guilty, therefore, is that while the latter is a confession that binds the defendant in other proceedings, the former has no effect beyond the particular case."

89 A.L.R. 2d 540 (originally published in 1963). To allow this type of plea to create a *Heck* bar would be to strip a no contest plea of its meaning. It is difficult to see how *Heck* can be based on a no contest plea, because the very essence of a no contest plea means it cannot be applied to other proceedings.

An alternative way to think about how nolo pleas apply to *Heck* is based in the Ninth Circuit's explanation of *Heck*, "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996). By virtue of a nolo plea, the civil action *cannot* arise out of the same found facts—because the fact of guilt was not established for any purpose but the conviction. As a matter of

9 – ORDER AND OPINION

degree then, since there are no found facts, a nolo plea presents a lesser *Heck* problem than a guilty plea. Such an understanding of a nolo plea comports with *Lockett's* analysis that a Plaintiff who was "not tried," had "no evidence. . .introduced against him," and whose "conviction derive[d] from a plea not from a verdict" should not have *Heck* bar his civil rights claims. Mr. Flores-Haro was not tried and had no evidence introduced against him. His conviction derived from a plea and not from a verdict. I am hesitant to apply *Heck* to nolo pleas generally given those circumstances.

Specifically, the plea allocution in this case raises further doubt as to the propriety of applying *Heck* to Mr. Flores-Haro's claim. The state judge, when explaining the impact of the nolo plea to Mr. Flores-Haro, seemed to believe it would not prevent Plaintiff's civil action and, more importantly, he told Plaintiff as much. *See Rhead v. Mundy*, 71 F. App'x 729, 730 (9th Cir. 2003)[2] ("The state-court judge, who was in the best position to understand the factual basis of Rhead's conviction, apparently saw no bar to any civil proceeding arising from Rhead's nolo plea.") The judge's commentary on the plea would tend to undermine the validity of the plea if I subsequently found this Section 1983 action barred by the plea. If Mr. Flores-Haro were successful in withdrawing his plea, this case would have no convictions to call into question and *Heck* would not apply.

Based on the purpose of a no contest plea and the explanation given to Plaintiff, I believe Plaintiff Flores-Haro's plea of no contest to further undermine the application of the *Heck* doctrine in this case. To the degree the Ninth Circuit has applied *Heck* to no contest pleas, it has never done so on facts like those presented here, including a no contest plea colloquy specifically contemplating civil litigation.

---

[2] *Rhead* is unpublished and generally does not constitute precedent. *See* 9th Cir. R. 36–3.

10 – ORDER AND OPINION

e. Habeas

The Ninth Circuit has previously looked past the language in *Heck* to analyze its reasons before applying its rule. In one case, the court admitted "there is language in *Heck* suggesting that the prior overturning of an underlying conviction is invariably a prerequisite for a § 1983 action that implies the conviction's invalidity" but the court allowed a claim that would have been *Heck* barred to proceed without an overturned conviction. *Nonnette v. Small*, 316 F.3d 872, 877 (9th Cir. 2002). The court in *Nonnette* demonstrated that the reasoning and purpose of *Heck* should govern rather than the unquestioning application of a phrase. *Id.* at 876. Just so here.

In addition to the analytical strength of *Nonnette*, the case reveals another problem with the application of *Heck* to cases like that of Mr. Flores-Haro. *Nonnette* recognized that when a habeas petition is mooted, *Heck* should not apply. The rule on mootness for misdemeanor cases has been called into question by the Ninth Circuit. The controlling law, outlined in *Chacon*, holds that a misdemeanor petition is never mooted because "[o]nce convicted, one remains forever subject to the prospect of harsher punishment for a subsequent offense as a result of federal and state laws that either already have been or may eventually be passed." *Chacon v. Wood*, 36 F.3d 1459, 1463 (9th Cir. 1994) *accord Chaker v. Crogan*, 428 F.3d 1215, 1219 (9th Cir. 2005). The court reached this expansive view of collateral consequences in a case that did not consider *Heck*. Other Ninth Circuit panels have raised concerns about the *Chacon* decision. In *Larche*, the Court wrote:

> In [*Chacon*], the panel held that there is to be a presumption of collateral damages . . . and ruled that the presumption of collateral damages is irrebuttable, even in misdemeanor cases. This we question. In completely eliminating the mootness doctrine from habeas cases, the *Chacon* opinion ignored the constitutional underpinnings of the mootness doctrine, and the traditional role of the Great Writ.

*Larche v. Simons*, 53 F.3d 1068, 1069-70 (9th Cir. 1995) *overruled by McMonagle v. Meyer*, 802 F.3d 1093 (9th Cir. 2015) (not addressing mootness concerns).

11 – ORDER AND OPINION

The *Chacon* ruling has the unintended consequence of erasing a path to 1983 relief for claimants who would otherwise qualify. Of particular concern, the structure creates the possibility for abuse by incentivizing governments to over-charge the criminal defendant and then offer an irresistible plea bargain—one that disposes of many of the charges, includes no jail time, and, crucially, obtains for the government a misdemeanor conviction that will serve as a shield for later 1983 actions. It raises serious questions about *Heck* and how it could be applied.

## Conclusion

With none of the undergirding rationales for *Heck* in place, it would be thoughtless to apply *Heck* without questioning its purpose or considering the particular facts of the case. In this case, as a consequence of Plaintiff Flores-Haro's no contest plea, the statements of Judge Jones regarding future civil cases, and Plaintiffs' battery claim, I find in these limited circumstances *Heck* does not bar Plaintiffs' Section 1983 action. I therefore DENY Defendants' Motion for Summary Judgment on Plaintiffs' Section 1983 claim [108, 113].

DATED this  3rd   day of February, 2016.

      /s/ Michael W. Mosman
     MICHAEL W. MOSMAN
     United States Chief District Judge