IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ADALBERTO FLORES-HARO, ALMA GRANADOS-MILLAN, DANIEL IBARRA, J.I., a minor, Y.I., a minor, T.F., a minor, and Ti.F., a minor,<br>　　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF HILLSBORO and WASHINGTON COUNTY,<br><br>　　　　　Defendants. | No. 3:12-CV-01616-MO<br><br>**FINAL JURY INSTRUCTIONS** |

DATED February  14 , 2018

/s/ Michael W. Mosman
_____
MICHAEL W. MOSMAN
Chief United States District Judge

INSTRUCTION NO. 1

**DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

INSTRUCTION NO. 2

**BURDEN OF PROOF**

A party must prove any claim that party has made.  This is called the burden of proof.  In this case, Plaintiffs must prove their claims by a preponderance of the evidence.  Defendants must prove their affirmative defenses by a preponderance of the evidence.

When a party must prove a claim by a preponderance of the evidence, that party must persuade you by evidence that makes you believe the claim is more likely true than not true. After weighing all of the evidence, if you cannot decide that something is more likely true than not true, you must conclude that the party did not prove it. You should consider all of the evidence, no matter who produced it.

INSTRUCTION NO. 3

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits which are received into evidence;

(3) any facts to which the lawyers have agreed; and

(4) any facts that I may instruct you to accept as proved.

INSTRUCTION NO. 4

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits are received only for a limited purpose. When I have given a limiting instruction, you must follow it.

(4) Anything you may see or hear when the court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

INSTRUCTION NO. 5

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

INSTRUCTION NO. 6

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.  the witness's opportunity and ability to see or hear or know the  things testified to;

2.  the witness's memory;

3.  the witness's manner while testifying;

4.  the witness's interest in the outcome of the case, if any;

5.  the witness's bias or prejudice, if any;

6.  whether other evidence contradicted the witness's testimony;

7.  the reasonableness of the witness's testimony in light of all the evidence; and

8.  any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

INSTRUCTION NO. 7

**EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

INSTRUCTION NO. 8

**COMMON LAW NEGLIGENCE — INTRODUCTION AND ELEMENTS**

The law assumes that all people have obeyed the law and have been free from negligence. The mere fact that an accident or injury occurred is not sufficient by itself to prove negligence. It is, however, something you may consider along with other evidence.

Plaintiff Adalberto Flores-Haro has made a claim for negligence against Defendants. This requires Mr. Flores-Haro to prove each of the following:

(1)    Defendants' conduct was negligent;

(2)    Defendants' negligent conduct was a cause of harm to Mr. Flores-Haro; and

(3)    The harm was reasonably foreseeable.

INSTRUCTION NO. 9

**NEGLIGENT CONDUCT DEFINED**

The law requires every person to use reasonable care to avoid harming others.  A person's conduct is negligent if that person fails to use reasonable care.

Reasonable care for a law enforcement officer is the degree of care and judgment used by reasonable officers to avoid harming themselves or others.  A law enforcement officer fails to use reasonable care when that officer does something that a reasonable officer would not do, or fails to do something that a reasonable officer would do under similar circumstances.

In deciding whether an officer used reasonable care, consider the dangers apparent or reasonably foreseeable when the events occurred.  Do not judge the officer's conduct in light of later events; instead, consider what the officer knew or should have known at the time.

INSTRUCTION NO. 10

**FORESEEABILITY**

A person is liable only for the reasonably foreseeable consequences of his or her actions. There are two things that must be foreseeable.  First, Mr. Flores-Haro must be within the general class of persons that one reasonably would anticipate might be threatened by Defendants' conduct.  Second, the harm suffered must be within the general class of harms that one reasonably would anticipate might result from Defendants' conduct.

INSTRUCTION NO. 11

**COMPARATIVE NEGLIGENCE**

The law provides for comparative negligence. This means that you are to determine each party's negligence, if any.  You will have one verdict form, which I will explain to you.

INSTRUCTION NO. 12

**COMPARATIVE FAULT/NEGLIGENCE**

With regard to his negligence claim, Plaintiff Adalberto Flores-Haro and Defendants have each alleged that the damage was caused by the other's negligence. If you find that Defendants and Mr. Flores-Haro were negligent and that their negligence caused the alleged damage to Mr. Flores-Haro, then you must compare the negligence of Mr. Flores-Haro to the negligence of Defendants for Mr. Flores-Haro's negligence claim.

In making this comparison, you must measure the percentage of negligence of each and not the percentage of damage caused by each.

The comparison of negligence must be expressed in terms of percentages that total 100 percent. If Mr. Flores-Haro's negligence is more than 50 percent, then your verdict on his negligence claim is for Defendants. On the other hand, if Mr. Flores-Haro's negligence is 50 percent or less, then your verdict on that claim is for Mr. Flores-Haro.

Do not reduce the amount of Mr. Flores-Haro's damages, if any, as a result of your comparison. I will reduce the amount of your verdict by the percentage of Mr. Flores-Haro's negligence, if any.

INSTRUCTION NO. 13

**LEGAL PRINCIPLES OF USE OF PHYSICAL FORCE**

Generally, under Oregon law, a person in lawful possession of premises is justified in using physical force upon another person when and to the extent that the person reasonably believes it necessary to prevent or terminate what the person reasonably believes to be the unauthorized entry or attempted entry by that other person in or upon the premises. A person may use deadly physical force under the circumstances set forth above only if in defense of a person or when the person reasonably believes it necessary to prevent the commission of arson or a felony by force and violence by the trespasser.

Generally, under Oregon law, an officer's warrantless entry into private premises is unlawful unless justified by, among other things, exigent circumstances. Exigent circumstances are those that require police to act swiftly to prevent danger to life or serious damage to property, or to forestall a suspect's escape or the destruction of evidence.

It is up to you to decide in this case whether Mr. Flores-Haro or the law enforcement officers' reliance on these legal principles was reasonable. It is also up to you to decide whether, even if Mr. Flores-Haro or the law enforcement officers acted in accordance with these legal principles, their actions were reasonable.

INSTRUCTION NO. 14

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Plaintiffs have alleged a claim for intentional infliction of emotional distress.  This requires Plaintiffs to prove each of the following:

(1)    Defendants intended to inflict severe emotional distress on Plaintiffs;

(2)    Defendants' conduct caused Plaintiffs' severe emotional distress; and

(3)    Defendants' conduct was an extraordinary transgression of the bounds of socially tolerable behavior.

INSTRUCTION NO. 15

**INTENT DEFINED**

Intent means either:

(1)      the actor desired to cause the consequences of his actions; or

(2)      the actor believed that the consequences were substantially certain to result from his actions.

INSTRUCTION NO. 16

*SEVERE EMOTIONAL DISTRESS* **DEFINED**

Emotional distress includes mental suffering, mental anguish, mental or nervous shock, fright, and all highly unpleasant mental or emotional reactions.

In determining whether the emotional distress was severe, you should consider its intensity and duration. To be severe, the emotional distress must be substantial or enduring, and not mild or transitory.

INSTRUCTION NO. 17

**NO INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FOR SHOOTING**

Due to legal rulings that I have made, during your consideration of the claim for Intentional Infliction of Severe Emotional Distress brought by each of the Plaintiffs against each of the Defendants, you cannot find that defendants intended to inflict severe emotional distress by the act of shooting plaintiff Mr. Flores-Haro or award any plaintiff emotional distress damages from the shooting.

INSTRUCTION NO. 18

**DAMAGES—PRELIMINARY INSTRUCTION**

If you find that Defendants are at fault or negligent, then you must decide whether Plaintiffs have been damaged and, if so, the amount of their damages.

The fact that I am instructing you with respect to damages is not to be considered by you as an attempt by the court to suggest that you should or should not award damages.

There are two types of damages alleged in this case, economic and noneconomic damages.

Of these two types of damages, you should consider those which you find to have been sustained by each of Plaintiffs as a result of Defendants' fault or negligence.

Plaintiffs must prove economic and noneconomic damages by a preponderance of the evidence.

I will now explain economic and noneconomic damages.

INSTRUCTION NO. 19

**DAMAGES—ECONOMIC**

Economic damages are the objectively verifiable monetary losses that a plaintiff has incurred or will probably incur. In determining the amount of economic damages, if any, consider the reasonable value of necessary medical, rehabilitative, and other health care and services for treatment of Plaintiff Adalberto Flores-Haro.

INSTRUCTION NO. 20

**NON-ECONOMIC DAMAGES**

Noneconomic damages are the subjective, nonmonetary losses that a Plaintiff has sustained or probably will sustain in the future.

The law does not furnish you with any fixed standard by which to measure the exact amount of noneconomic damages. However, the law requires that all damages awarded be reasonable. You must apply your own considered judgment, therefore, to determine the amount of noneconomic damages. In determining the amount of noneconomic damages, if any, consider each of the following:

(1) Any pain, mental suffering, emotional distress and humiliation that Plaintiffs have sustained from the time they were injured until the present, and that the Plaintiffs probably will sustain in the future as the result of their injuries; and

(2) Any inconvenience and interference with Plaintiffs' normal and usual activities apart from activities in a gainful occupation that you find have been sustained from the time they were injured until the present and that Plaintiffs probably will sustain in the future as the result of their injuries.

INSTRUCTION NO. 21

**DAMAGES—PERMANENT INJURY—LIFE EXPECTANCY—MORTALITY TABLES**

If you find that Plaintiff Adalberto Flores-Haro is entitled to recover for permanent injury, you must determine his probable life expectancy, taking into consideration all evidence bearing on that issue, such as Mr. Flores-Haro's occupation, sex, health, habits, and activities. Life expectancy shown by the mortality tables is an estimate of the probable average remaining life of all persons in our country of a given age. According to the standard mortality tables, the life expectancy of a man aged 37 years is an additional 40.6 years. This is a fact you may consider in arriving at the amount of damages.

INSTRUCTION NO. 22

**FAULT/NEGLIGENCE OF EMPLOYEE/AGENT IMPUTED TO EMPLOYER/PRINCIPAL**

For the purposes of Plaintiffs' claims, any action by the agent or employee of a government entity is the act of that governmental entity if the act was within the scope of that person's authority or employment. In this case, the government entities are the only proper parties to this action. It is an agreed fact that all members of the Washington County Tactical Negotiations Team (TNT) were acting within the scope of their employment or agency. The TNT was under the supervision and control of Defendant Washington County. Thus, the fault or negligence of any member of the TNT team is also the fault or negligence of defendant Washington County.  The City of Hillsboro is responsible only for any fault or negligence of its employee, Stephen Slade.

INSTRUCTION NO. 23

**STATUTE, RULE OR STANDARD AS EVIDENCE WHETHER PLAINTIFF FLORES-HARO AND DEFENDANTS MET STANDARD OF CARE**

In evaluating whether Defendants were negligent and whether Plaintiff Adalberto Flores-Haro was contributorily negligent, you may consider as evidence the following statutes and standards in determining whether Mr. Flores-Haro and Defendants TNT members acted as reasonably careful persons in the circumstances of this case.

A.    Oregon Revised Statute 161.225 provides that a person in lawful possession or control of premises is justified in using physical force upon another person when and to the extent that the person reasonably believes it necessary to prevent or terminate what the person reasonably believes to be the unauthorized entry or attempted entry by that other person in or upon the premises.

A person may use deadly physical force under the circumstances set forth above only if in defense of a person or when the person reasonably believes it necessary to prevent the commission of arson or a felony by force and violence by the trespasser.

B.    Oregon Revised Statute 163.190 provides:

(1)    A person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury.

(2)    Menacing is a Class A misdemeanor.

C.    Oregon Revised Statute 163.195 provides:

(1)    A person commits the crime of recklessly endangering another person if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.

(2)    Recklessly endangering another person is a Class A misdemeanor.

C.    Oregon Revised Statute 166.190 provides:

Any person over the age of 12 years who, with or without malice, purposely points or aims any loaded or empty pistol, gun, revolver or other firearm, at or toward any other person within range of the firearm, except in self-defense, shall be fined upon conviction in any sum not less than $10 nor more than $500, or be imprisoned in the county jail not less than 10 days nor more than six months, or both.

INSTRUCTION NO. 24

**BATTERY**

Plaintiff Adalberto Flores-Haro claims that Defendants committed a battery.  This requires Mr. Flores-Haro prove that:

(1)    One or more of Defendants acted, intending to cause harmful or offensive contact with Mr. Flores-Haro; and

(2)    One or more of Defendants' actions directly or indirectly caused a harmful or offensive contact with Mr. Flores-Haro.

INSTRUCTION NO. 25

**DEFENSES TO BATTERY**

Defendants have raised self-defense and defense of others as defenses to Plaintiff Adalberto Flores-Haro's claim for battery. Those defenses provide that a person is privileged to use that degree of force which he reasonably believes to be necessary to defend himself or others against what he reasonably believes to be the use or imminent use of deadly physical force. Defendants must prove this defense by a preponderance of the evidence.

INSTRUCTION NO. 26

**CAUSATION "SUBSTANTIAL FACTOR"**

Many factors may operate either independently or together to cause harm or injury. In such a case, each may be a cause of the harm or injury even though the others by themselves would have been sufficient to cause the same harm or injury.

If you find that Defendants' act or omission was a substantial factor in causing the harm or injury to Plaintiffs, you may find that Defendants' conduct caused the harm or injury even though it was not the only cause. A substantial factor is an important factor and not one that is insignificant.

INSTRUCTION NO. 27

STIPULATIONS OF FACT

The parties agree, or stipulate, that:

1. The plaintiffs' names, dates of birth and ages on March 13, 2012 are as follows:

Adalberto Flores-Haro, June 11, 1980, age 31; Alma Granados-Millan, April 19, 1975, age 36; Jennifer Ibarra, November 25, 1997, age 14; Daniel Ibarra-Granados, June 11, 1996, age 15 Yamilet Ibarra, June 6, 2002, age 9; Tommy Flores, April 25, 2004, age 7; Tiany Flores, November 24, 2007, age 5.

2. On March 13, 2012, all plaintiffs resided at 9512 N. Woolsey Avenue, Portland, Oregon, located in a community known as New Columbia Villa.

3. Plaintiff Adalberto Flores-Haro owned a .44 caliber Llama Super Comanche handgun.

4. The Washington County Tactical Negotiations Team is an interagency team comprised of officers from multiple Washington County law enforcement agencies including, but not limited to, the Washington County Sheriff's Office, the City of Hillsboro Police Department, the City of Beaverton Police Department and the City of Forest Grove Police Department.

5. On March 13, 2012, 30 members of the Washington County Tactical Negotiations Team (TNT) and two volunteers responded to a request by the City of Portland Police Bureau to assist with the service of a high risk arrest warrant for the arrest of an Anthony Bagsby, a person suspected of attempted murder, assault and robbery. Mr. Bagsby's residence was located at 9520 N. Woolsey Avenue, Portland, Oregon.

6. All members of the Washington County Tactical Negotiations Team (TNT) were acting within the course and scope of their employment.

7. On March 13, 2012, between 6:45 p.m. and 8:27 p.m., WCSO Sergeant Shaun Bailey, together with Sergeant Troy Barnbrook, Beaverton PD, other members of TNT, planned the service of the arrest warrant on Anthony Bagsby with information provided by the Portland Police Bureau.

8. After the tactics for service of the arrest warrant were planned, Team Leader Shaun Bailey gave out assignments to each member of the Washington County Tactical Negotiations Team. These assignments included four inner perimeter containment teams, two of which were also tasked with arresting Anthony Bagsby.

9. One of the inner perimeter containment teams, the Inner Perimeter "4-side" containment team ("IP4 team") consisted of the following eight team members: Beaverton PD Sergeant Troy Barnbrook, Team Leader, WCSO Deputy Brian McLeod, WCSO Deputy John Egg, Hillsboro Police Department Officer Steven Slade, WCSO Deputy Eamon O'Reilly, WCSO Deputy Kent Wimberley, K-9 handler, Forest Grove PD Sergeant Dean Foster and Beaverton PD Officer Matt Groshong.

10. The IP4 team was assigned to contain the east side of the Bagsby residence.

11. All members of the IP4 team were armed with rifles except WCSO Deputy Kent Wimberly who was the K-9 handler and accompanied by his dog, Sig, and WCSO Deputy John Egg who was assigned a less-lethal .40mm baton launcher.

12. At approximately 9:35 p.m., TNT Team Leader Shaun Bailey contacted Sgt. Barnbrook and directed him to deploy his team to the New Columbia Villa.

13. At approximately 9:45 p.m. the IP4 team arrived in the vicinity of 9508 N. Woolsey, a residence to the southeast of Mr. Bagsby's residence.

14. The IP4 team proceeded through the back and east side yards of 9508 N. Woolsey, and took up a position on the northeast corner of that residence.

15. At this location one or more of the IP4 team members made and were able to maintain visual contact with the target house located at the southeast corner of 9520 N. Woolsey Avenue.

15a. The team was facing Plaintiffs' front entrance and side yard located at 9512 N. Woolsey Avenue which was immediately north of their location.

16. From this location, Sergeant Dean Foster and Officer Matt Groshong moved north, scaled a six-foot fence and entered plaintiffs' side yard and backyard.

17. Alma Granados-Milan noticed someone in the back yard and alerted her husband.

18. Adalberto Flores-Haro (husband to Alma Granados-Milan) was in bed at the time and moved quickly downstairs and out the kitchen door where he saw one or two figures.

19. Adalberto Flores-Haro went out the front door to confront the figures.

19a. Plaintiff was told to "get back in your house."

20. Adalberto Flores-Haro told his son "go get my gun" loud enough that the IP4 team members, including those who had entered and left his back yard, heard him.

21. Adalberto Flores-Haro then ran back inside, got the gun himself, and came out his front door with a .44 caliber Super Llama Comanche hand gun.

22. Deputy John Egg, Deputy Brian McLeod and Officer Steven Slade fired their weapons at plaintiff Adalberto Flores-Haro.

23. Plaintiff Adalberto Flores-Haro sustained gunshot wounds to his abdomen, right hand and right arm.

24. At approximately 9:50 p.m., Sgt. Barnbrook announced via radio "shots fired."

25. All plaintiffs other than Adalberto Flores-Haro were removed from their home by Washington County Tactical Negotiation Team members.

26. TNT members Washington County Sheriff's Deputy Jeremy Braun and Forest Grove PD Sergeant Dean Foster subsequently dragged Adalberto Flores-Haro by his arms from the front entrance of his home to the curb at N. Woolsey

    You should treat these facts as having been proved. It is your responsibility to determine what weight, if any, you will give to these facts in reaching your verdict.

INSTRUCTION NO. 27

**DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror.  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

INSTRUCTION No. 28

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

INSTRUCTION NO. 29

**RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.