MICHAEL E. ROSE, OSB #753221
E-mail: mrose@civilrightspdx.com
BETH CREIGHTON, OSB #972440
E-mail: beth@civilrightspdx.com
CREIGHTON & ROSE, PC
65 S.W. Yamhill Avenue, Ste. 300
Portland, Oregon  97204
Phone:  (503) 221-1792
Fax:      (503) 223-1516

DAVID D. PARK, OSB #803358
ELLIOTT & PARK, P.C.
Abernethy House
0324 S.W. Abernethy Street
Portland, Oregon  97239-4356
Telephone:     (503) 227-1690
Facsimile:      (503) 274-8384
E-mail: dave@elliott-park.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ADALBERTO FLORES-HARO** *et al.*, | **3:12-cv-01616-MO** |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANTS' OBJECTIONS TO PLAINTIFFS' PROPOSED JUDGMENT AND MOTION TO LIMIT AWARD** |
| vs. | |
| **STEPHEN SLADE** *et al.*, | |
| Defendants. | *Oral Argument Requested* |

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE i – PLTFS' MEMORANDUM IN RESPONSE TO DEFS' OBJS
TO JUDGMENT AND MOT TO LIMIT AWARD

**TABLE OF CONTENTS**

**I. Economic Damages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II.**    **Election of Claims or Remedies** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**III.**    **Oregon Tort Claim Cap** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       **A. Generally** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       **B. Substantial Remedies and *Quids pro quo*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       **C. Substantiality of the judgment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       **D. Right to a jury trial** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       **E. Which damage cap(s) to apply** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

       **F. Number of Caps** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

              **1. Two defendants** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

              **2. Two separate occurrences** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**IV. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

TABLE OF AUTHORITIES

CASES

*Batdorff v. Oregon City*, 53 Or. 402, 100 P 937 (1909) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Blanton v. Mobil Oil Corp.*, 721 F.2d 1207 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Eagle Point v. Hanscom*, 121 Or. 40 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236 (9th Cir.2014 . . . . . . . . . . . . . . . . . . . . . 9

*Fraker v. Benton County Sheriff's Office*, 214 Or. App. 473 (2007) . . . . . . . . . . . . . . . . . . . . . 6

*Gearin v. Marion County*, 110 Or. 390, 223 P.929 (1924) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Hale v. Port of Portland,* 308 Or. 508, 783 P.2d 506 (1989) . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

*Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . 1

*Horton v. OHSU*, 359 Or. 168 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-17

*In re First All. Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Johns v. City of Eugene*, 2018 WL 634519 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222 (9th Cir.2001) . . . . . . . . . . . . . . 9

*Kern County Land Co. v. Lake County*, 232 Or. 405, 375 P.2d 817 (1962) . . . . . . . . . . . . . . . 20

*Lakin v. Senco Products, Inc.*, 329 Or. 62, 987 P.2d 463 (1999) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lamie v. United States Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) . . . . . 21

*Lee v. Madigan*, 358 U.S. 228, 79 S.Ct. 276, 3 L.Ed.2d 260 (1959) . . . . . . . . . . . . . . . . . . . . . 12

*Los Angeles Memorial Coliseum Comm'n v. National Football League*, 791 F.2d 1356 (9th Cir 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Mattson v. Astoria*, 39 Or. 577, 65 P 1066 (1901) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Molodyh v. Truck Insurance Exchange*, 304 Or. 290, 744 P.2d 992 (1987) . . . . . . . . . . . . . . . 16

*Municipal Sec. Co. v. Baker County*, 33 Or. 238, 54 P. 174 (1898) . . . . . . . . . . . . . . . . . . . . . 20

*Noonan v. Portland*, 161 Or. 213, 88 P.2d 808 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Oregonian Publishing Co. v. O'Leary*, 303 Or. 297, 736 P2d 173 (1987) . . . . . . . . . . . . . . . . 15

*Oregonians for Sound Econ. Policy, Inc. v. State Accident Ins. Fund Corp.*, 218 Or. App. 31, 49 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

*PGE v. Bureau of Labor and Industries*, 317 Or. 606, 859 P.2d 1143 (1993) . . . . . . . . . . . . . 21

*Rains v. Stayton Builders Mart, Inc.*, 289 Or. App. 672, 410 P.3d 336 (2018) . . . . . . . . . . . . . 16

*Rapp v. Multnomah County*, 77 Or. 607, 152 P. 243, 243-244 (1915) . . . . . . . . . . . . . . . . . . . 20

*Rooney v. Kulongoski (Elections Division # 13)*, 322 Or. 15, 902 P.2d 1143 (1995) . . . . . . . . 18

*Seton v. Hoyt*, 34 Or. 266, 55 P. 967 (1898) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*State v. Stoneman*, 323 Or. 536, 920 P2d 535 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*State v. Tourtillott*, 289 Or. 845, 618 P2d 423 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Suzuki v. Yuen*, 617 F.2d 173 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Tenold v. Weyerhaeuser Co.*, 127 Or. App. 511, 873 P.2d 413 (1994) . . . . . . . . . . . . . . . . . . . . 17

*Teutscher v. Woodson*, 835 F.3d 936 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Van Lom v. Schneiderman,* 187 Or. 89, 95-97, 210 P.2d 461 (1949) . . . . . . . . . . . . . . . . . . . . . 17

*Vasquez v. Double Press Mfg.*, 288 Or. App. 503, 406 P.3d 225 (2017) . . . . . . . . . . . . . . . . . . 16

*Weaving v. City of Hillsboro*, 763 F.3d 1106 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Weeks v. Angelone*, 528 U.S. 225, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000) . . . . . . . . . . . . . . . . 9

*Williams v. Gaye*, 2018 U.S. App. LEXIS 7057 (9th Cir Mar 21, 2018) . . . . . . . . . . . . . . . . . . . 1

*Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) . . . . . . . . . . . . . . 21

*Wright v. Turner*, 354 Or. 815 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

STATUTES

ORS 190.476(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

ORS 30.265-.300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-19, 21

ORS 30.265(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ORS 30.271(1)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

ORS 30.271(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ORS 30.272(1)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

ORS 30.272(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

ORS 31.170. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ORS 402.240. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22


CONSTIUTIONAL PROVISIONS

Article I, section 10, Oregon Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-15, 23

Article I, section 17, Oregon Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 17, 23

Article I, section 20, Oregon Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Article III, section 1, Oregon Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Article IV, Section 24, Oregon Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Article VII (Amended), section 3, Oregon Constitution . . . . . . . . . . . . . . . . . . . . . . . . . 17


OTHER

Edward Coke, *The Second Part of the Institutes of the Laws of England* (1797 ed) . . . . . . . . . 12

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE v – PLTFS' MEMORANDUM IN RESPONSE TO DEFS' OBJS
TO JUDGMENT AND MOT TO LIMIT AWARD

Plaintiffs respond to Defendant Washington County and Defendant City of Hillsboro's objections to plaintiffs' proposed form of judgment and motions to limit the award rendered by the jury as follows. Although in a different order of presentation, defendants essentially make the same arguments which will be addressed herein.

## I.    Economic Damages[1]

" "In reviewing a jury's damages award, its 'finding of the amount of damages must be upheld unless the amount is 'grossly excessive or monstrous,' clearly not supported by the evidence, or 'only based on speculation or guesswork.' *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1297 (9th Cir. 1984) (quoting *Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1216 (9th Cir. 1983), cert. denied, 471 U.S. 1007, 105 S. Ct. 1874, 85 L. Ed. 2d 166 (1985)), cert. denied, 469 U.S. 1190, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985)."

*Los Angeles Memorial Coliseum Comm'n v. National Football League*, 791 F.2d 1356, 1360 (9th Cir 1981).

"Great deference" is afforded to a jury's award of damages and the court must uphold the award "unless it is 'clearly not supported by the evidence' or 'only based on speculation or guesswork.'" *Williams v. Gaye*, 2018 U.S. App. LEXIS 7057, *35 (9th Cir Mar 21, 2018) (*quoting In re First All. Mortg. Co.*, 471 F.3d 977, 1001 (9th Cir. 2006).

The relevant final jury instruction on economic damages given in this case was the following:

INSTRUCTION NO. 19

### DAMAGES—ECONOMIC

Economic damages are the objectively verifiable monetary losses that a plaintiff has incurred or will probably incur. In determining the amount of economic damages, if any, consider the reasonable value of necessary medical, rehabilitative, and other health care and services for treatment of Plaintiff Adalberto Flores-Haro.

INSTRUCTION NO. 21

### DAMAGES—PERMANENT INJURY—LIFE EXPECTANCY—MORTALITY TABLES

---

[1] Responding to Hillsboro's section 1, pp. 2-3 of its Objections and Washington County's Section B, pp. 5-6 of its objections.

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

If you find that Plaintiff Adalberto Flores-Haro is entitled to recover for permanent injury, you must determine his probable life expectancy, taking into consideration all evidence bearing on that issue, such as Mr. Flores-Haro's occupation, sex, health, habits, and activities.

Life expectancy shown by the mortality tables is an estimate of the probable average remaining life of all persons in our country of a given age. According to the standard mortality tables, the life expectancy of a man aged 37 years is an additional 40.6 years. This is a fact you may consider in arriving at the amount of damages.

Defendants did not object to either jury instruction.  Hence they have waived any objection post-verdict to the propriety of these instructions or the factors given to the jury to assess damages.

According to Jury Instruction 19 the jury may consider evidence of future economic loss plaintiff Adalberto Flores Haro "will probably incur" for "necessary medical, rehabilitative and other health care services."

First, Plaintiff Flores Haro (herein "Plaintiff") presented stipulated evidence that his medical bills were $498,006.79.  Neither defendant challenges this amount post-verdict, only the amount in excess of this amount.  The Jury awarded plaintiff economic damages for the battery claim in the amount of $1,500,000 and economic damages for the negligence claim in the amount of $500,000 (reduced by 40% contributory negligence.)

Plaintiff presented the following evidence of the permanency of Adalberto Flores-Haro's injuries:

1) Dr. Britton Frome

Q. And can you describe how Mr. Flores-Haro's arm works now.
A. Unfortunately, his elbow really doesn't move very much, and when it does move, it's painful.
Q. And is that an injury that's going to be permanent?
A. He has a permanent injury involving his elbow joint and a permanent nerve injury that affects his hand and the use of his hand.
Q. And you don't expect that to get any better?
A. No.
* * *
Q. And does he have limitations of his right arm?
A. He does.

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

Q. And what are those limitations?
A. He has limited range of motion of his elbow, he has limited strength in his right hand, and he has also decreased sensation or feeling in the -- in part of his right hand.
Q. About how much is he able to lift?
A. I -- I'm not exactly sure, but I would bet that he could only lift one or two pounds, maybe five at the most.
Q. And are those limitations likely to improve over time?
A. I think it would take an additional procedure on his elbow, and I don't think he would ever lift much more than that.
Q. Is there pain associated with the loss of the ulnar nerve?
A. Yes.
Q. And is that something that you expect to go away after time?
A. I believe that it will stay essentially how it is now.

Trial Transcript (Tr.) 510:4-12, 510:21-511:13

    2) Adalberto Flores Haro, Tr. 734:12-736:19-741:9

    Adalbeto Flores Haro testified that Dr. Frome's testimony was consistent with what he was experiencing in terms of physical limitations and current suffering, except that it is a lot more painful than she described it. He demonstrated that he could not straighten his arm and he has very limited motion moving backwards and side to side even 6 years after being shot. He said that his right arm is mostly a back up for this left and he cannot lift even light things without a lot of pain. In addition, he testified as follows:

    Q. Do you suffer the pain -- do you feel the pain in your arm all the time or just some of the time?
    A. All the time, 24/7.
    Q. Are you feeling it right now?
    A. Yeah.
    Q. Are you sore right now?
    A. Yeah.
    * * *
    Q. So that wound to your abdomen, have you -- have you had problems with your internal functioning, like your digestion, for example?
    A. Every day.
    Q. Okay. What kind?
    A. Diarrhea, pain, real painful stuff. I mean --
    Q. Now, you've been getting up -- the jurors, I'm sure, have noticed. You've been getting up and moving around and sometimes just sort of bracing yourself on the bar over here, correct?
    A. Correct.
    Q. Why have you been doing that?
    A. Just so -- the pain is unbearable. I cannot stand or sit for long periods of time or walk for long periods of time.

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 3 – PLTFS' MEMORANDUM IN RESPONSE TO DEFS' OBJS
TO JUDGMENT AND MOT TO LIMIT AWARD

Everything, even to open a bottle of ketchup, sometimes I need help.
Q. Have you had difficulties going to the bathroom?
A. Every day.

Tr.739:17-740:9, 740:15-741:9

Mr. Flores Haro also testified that he can only sleep in one position because if he sleeps in another position, he feels a lot worse. He only sleeps for a couple hours at a time. He has to eat in the middle of the night because his stomach and his insides were reduced *Id*. 740:15-741:9.

He has mobility problems - bending over and getting up is painful. The pain has restricted his activities and everything is painful - walking, sitting, hiking - everything is painful. He cannot hug his children or pick them up or play or run with his kids. Tr. 742:4-743:8

3.    Alma Granados Milan testified that Adalberto Flores Haro is always in pain. He has problems with his stomach. He shuts himself self in bathroom and spends 1-2 hours in bathroom and she has to go to make sure he is ok. Sometimes when she goes in there, he is just lying on the floor and he starts doubling up and moving on the floor pale and weak, unable to even pick himself up. Once or twice they called the ambulance to come. When the ambulance got there, the medics said there was nothing they could do to help him. He has problems breathing when he exerts himself.

4.    Dr. Michaels video testimony also presented the following evidence of permanency - Trial Transcript 24:6-18.

Q. Are there any kinds of effects of doing something like that, removing a part of a small intestine and then hooking it back up?
A. No. Ideally, no, but nothing is perfect, so there's lots of known complications from any abdominal surgery. With this particular abdominal surgery the likelihood are obstructions from scarring at the site, obstructive kinking and chronic pain from the development of scar tissue inside the abdomen, which is called adhesions, the development or worsening of abdominal wall hernias. Those are really the main issues.

Tr. 25:14-26:21.

Q. And you described disruption to the abdominal wall.
A. Yes.

CREIGHTON    ATTORNEYS
& ROSE, PC    AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

Q. Can you explain that a little bit, please?

A. So the abdominal wall, it's complicated, a bunch of muscles and fibrous tissue, etcetera, etcetera. And it's designed to hold your guts in and keep the outside environment out. So when you have a loss of a big chunk of that, as he did, you need to reconstruct it in certain ways, and it's never going to be quite right, and it's never going to look quite right.

Q. How about function, besides look? I don't know how many people will be looking at abdominal walls.

A. People do, and that matters to them.

Q. Okay. You mean on the outside?

A. Yeah. But just something as simple as sitting up in bed I'm sure is going to be an issue for him for the rest of his life, just moving his bowels, just taking a deep breath and coughing, because all the muscles that form the package for those types of maneuvers are now disrupted.

Q. And you said it was filled with debris. What kinds of debris are you talking about?

A. Everything. I mean, pieces of porch, pieces of shirt, pants, belt, skin, bone, bullet, bowel, poo.

Q. Are you able to get all of that debris out?

A. No.

* * *

Q. Do you have an opinion, Dr. Michaels, whether it's reasonably medically probable that the injuries you treated would result in permanent problems for Mr. Flores-Haro?

A. Yes.

Q. Can you describe those problems, please?

A. I would expect that he'll be permanently disabled by the injury to his arm. How much disability he'll have, I don't know, but from the very first moment that I saw that injury knew that was going to be a life-changing event for him. I expect that he'll probably recover functionally from his belly as much as possible and maybe ultimately have some problems with digestion or with hernias or even with obstruction. He may also have some chronic pain from the abdomen, and I'm sure his arm will hurt forever.

Tr. 39:17- 40:9

Plaintiff also presented the following evidence of future medical expenses:

1)      Dr. Frome

Q. Is there anything medically that can be done for him?

A. There's a possibility of replacing his elbow. Elbow replacement is usually done later in life because there's a restriction of no lifting greater than five pounds, and we try to wait and do that type of replacement when someone is older.

Q. And is that something you'd recommend for Mr. Flores-Haro, who is under 40?

A. In my opinion, he's too young for that right now.

Tr. 510:13-20.

CREIGHTON
& ROSE, PC    | ATTORNEYS
| AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

Based upon the above evidence presented at trial, there was ample evidence of the "permanency of his injuries" and "medical, rehabilitative, and other health care and services for treatment of Plaintiff Adalberto Flores-Haro" that he "will probably incur." There is no basis to reduce the economic damages awarded by the jury.[2] "We may not weigh the evidence and impose a result we find to be preferable as long as the jury's verdict is supported by substantial evidence. *William Inglis & Sons*, 668 F.2d [1014] at 1026 [(9th Cir 1981)]." *L.A. Memorial Coliseum Comm'n,* 791 F.2d at 1360.

## II.     Election of Claims or Remedies[3]

Plaintiff is not required to elect between claims or damages. The jury properly aggregated the damages on the verdict form and the aggregate damage award does not represent a double recovery for a single wrong.

1.      The negligence and battery claims are not "inconsistent" with one another because they do not rely on the same factual allegations or predicates.[4] The court has previously so ruled and neither defendant has directed the court to any allegations in the Pretrial Order nor evidence in the record that would support the conclusion that the claims are inconsistent. No

---

[2] Dependent upon the court's ruling on the Tort Claim cap issues below, the decision on this issue may be less important, since if the court reduces the verdict to one or more caps, there will be limited availability of economic damages over $500,000 anyway.

[3] Responding to Hillsboro's section 2, p 3-6 of its Objections and Washington County's Section A, pg 2-5 of its objections.

[4] The court has noted that this issue is "not clearly covered by any case." Trial Tr. 826:23-24. However, two lines of cases support the soundness of the court's conclusion. First, those cases which recognize that a separate negligence claim based on a distinct act of negligence may be brought against a police officer in conjunction with a claim for excessive use of force. *See discussion in Johns v. City of Eugene*, 2018 WL 634519, *10-*15, Slip Copy (J. Aiken, 2018). Second, those cases which recognize that intentional torts against a plaintiff may be within the scope of foreseeable risks of harm resulting from a failure to exercise due care. *See Fraker v. Benton County Sheriff's Office*, 214 Or App 473, 490-493 (2007).

CREIGHTON & ROSE, PC   ATTORNEYS AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

case cited by defendants holds that negligence and battery claims based on different facts are necessarily inconsistent.

Tr. 814:14 to 815:15:

> THE COURT: Anyway, let's go ahead.
>
>         *     *     *     *     *
>
> So the City of Hillsboro orally made four different arguments yesterday. One is that it should be dismissed in its entirety, and I'm going to bring that up when I talk overall about that and Washington County's agency arguments. Two is that the battery claim forecloses the negligence claim, or vice versa, because they're really logically inconsistent with each other. You can't have, as was stated yesterday, an intentional unintentional act.
> And my tentative ruling is to deny that argument because I believe that the focus is on the factual predicates here, and the factual predicates for each claim are distinct. It's true that the factual predicates of the negligence claim leads to a harm that's the same basic harm as the battery claim, but I think that's permitted here. It might be helpful to imagine that you could have a negligent actor A who takes acts that overlap with an intentional actor B, so the victim is harmed by both people in much the same way. You wouldn't preclude both claims there just because the harm is the same.
> ...I believe because the factual predicates are distinct, I ought to deny that argument.

Tr. 826:9 to 827:8:

> MR. LEWIS: Plaintiffs have alleged different predicate facts, but those facts all lead to the same damages, which are the shooting -- which is the shooting of plaintiff Flores-Haro. So they're not different damages. Those are two inconsistent ways to get to the same damages, and the damages alleged are the shooting, which is a battery, an intentional act.
> If one of the predicate acts led to a different type of damages, it would seem that they could bring the separate claim, but when they all focus in on the same type, the same conduct of shooting Mr. Flores-Haro, that becomes the battery, just as in the soccer fight case, the acts leading up to the fight, to the throwing of fists, all led to the battery.
> THE COURT: I understand the argument and I appreciate that it's an argument that's not clearly covered by any case. The way I've analyzed it is you can suffer a harm from negligence. The natural consequence of negligent acts can be harm, one, and the natural consequence of intentional acts can result in the same harm, number one, but it doesn't mean that just because they meet with the same harm you can't separate them out and see them as harms that have flowed from two different streams of tort.
> So, again, it's not for a failure to appreciate that I'm out on a limb here. You've made your argument. I think I understand it and I'm going to come out differently.

2.      There is no double recovery because the jury unequivocally awarded separate

CREIGHTON
& ROSE, PC    ATTORNEYS AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

damages for battery and negligence.  This conclusion is plain from the colloquy of court and

counsel surrounding the final version of the verdict form and from the court's instructions to the

jury provided in its Response to Jury Question #3.

Tr. 1654:24 to 1656:23:

THE COURT: Go ahead and be seated.
You have the new verdict form in front of you. I had initially concluded that the various answers to the damages questions would all result in the same damage amount for all the claims, that there wouldn't be ways to award different damages for different claims, and therefore one line would cover us, and it would also tell us what to do for any reduction for comparative fault or contributory negligence, because if the jury awarded, let's say, you know, $100 for four claims, and one of those claims had to be reduced but the $100 was the same $100 for all the claims, then he'd get just $100 on all the claims. It wouldn't matter, in other words.
*Upon your argument this morning and further thought, I now believe that it is possible on the different claims in this case for the jury to award different damages amounts based on different reasons and facts, and therefore one damage line won't work*.
*So I now have different damage lines for each claim. And then to solve the problem that creates of not knowing whether awarding various amounts means that they want us to add all those together or not, I have a grand total line that says what's the grand total that you want for all claims, to help us know what the jury intends to do with their various numbers*. And that will allow us not to overcount the amounts they award on each claim, but also to handle the negligence claims separately from the others.
Any objection to that from plaintiffs?
MR. PARK: No objection.
THE COURT: From Washington County?
MR. GILMORE: Generally no, but the only issue that I might have, and you can either educate me on or not, is Flores-Haro's IIED claim has an economic damages line. That seems like it should be struck.
THE COURT: You're right. So I educated you on that.
MR. GILMORE: Thank you.
THE COURT: You were right. For Hillsboro?
MR. KRAEMER: Your Honor, we still subscribe that there should only be one damage line. The battery, especially -- well, all these all flowed from the same injury. It would seem to me the way you had it before, that if damages flowed from, say, the battery and the negligence, they get the battery damages. So the fact that there would be comparative on the negligence wouldn't really matter because they have the battery damages.
THE COURT: Right. *It may be true that they all flow from the same harm, and we'll learn that by how they fill out the grand total line*. So that's the verdict form I'll use when I see you at 1:30. (Emphases added).

Following submission of the case to the jury for deliberations, the jury posed the

following question to the court (Jury Note C, Question #3, Dkt 363, page 4):

During the trial plaintiffs presented total monetary damage requests associated

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 8 – PLTFS' MEMORANDUM IN RESPONSE TO DEFS' OBJS
TO JUDGMENT AND MOT TO LIMIT AWARD

with their claims.   Is the jury expected to consider those numbers in any way as the basis for awards, if any?  If so, is there any allocation (relative to Mr. Flores-Haro) expectations relative to battery versus stress versus negligence?

After conferral with counsel and without objection from counsel for either defendant, the court instructed the jury as follows:

> Response to Jury Question #3[5]
>
> In response to your first question, the award of damages, if any, is up to you. In response to your second question: Question #12 asks you to total the amount of all damages, if any, from all claims. If you were to find that Mr. Flores-Haro suffered different damages from the claims, then your answer to Question #12 would equal the total of your answers to #3, #6, and #11. But if you were to find that Mr. Flores-Haro suffered the same or overlapping damages from the different claims, then your answer to Question #12 might be lower than the total of your answers to #3, #6, and #11.

The jury subsequently returned its verdict, answering Question 12 by totaling their answers to Questions #3, #6 and #11.   The jury is presumed to have followed its instructions. *Teutscher v. Woodson*, 835 F.3d 936, 949 (9th Cir. 2016), citing *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000).

3.       There is substantial evidence to support the jury's express finding that defendants' acts of battery and negligence caused plaintiff Adalberto Flores-Haro separate injuries and damages.  It is undeniably true that "the shooting" is the harm for both the battery and the negligence.  As the court has already observed, however, it does not necessarily follow that the shots attributable to defendants' negligence caused the same injuries (wounds) and damages as the shots attributable to defendants' intentional acts of battery.   The following evidence supports the verdict:[6]

---

[5] Counsel request that the complete email chains, with attachments, generated as a result of the jury questions be made a part of the record.  Presently, neither the email exchanges nor the court's responses to Jury Questions #1-3 have been made a part of the record.

[6] A jury's verdict must be upheld if it is supported by substantial evidence. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir.2014); *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir.2001). Substantial evidence is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion[,] even if it is

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 9 – PLTFS' MEMORANDUM IN RESPONSE TO DEFS' OBJS
TO JUDGMENT AND MOT TO LIMIT AWARD

Law enforcement officers are responsible for each round they fire.  John Black testimony, Tr. 1178:19-22; Kyle Sumpter testimony, Tr. Transcript 1637:14-17.  Fourteen (14) total shots were fired.  Gaylen Warren testimony; Kyle Sumpter testimony, Tr. Transcript 1636:23-1637:3. Washington County Deputy McLeod fired five (5) times.  Brian McLeod testimony, Tr. Transcript 1525:10-12.   Hillsboro Officer Slade fired 9 times.  Steven Slade testimony.  Some of Officer Slade's shots were fired as Mr. Flores-Haro was retreating.  Steven Slade testimony, Tr. 1108:23-25.   Officer Slade was instructed by his Team Leader, Troy Barnbrook, to cease fire. Steven Slade testimony, Trial Transcript 1109:11-15; Troy Barnbrook testimony, Tr. 585:7-24. There were three distinct bursts of gun fire depicted on the FLIR video over a period of five seconds, *i.e.*, from 21:48:41 to 21:48:46, Defendants' Trial Exhibit 608.  All muzzle flashes captured by the FLIR video were attributable to defendants.  Joshua Cohen testimony.

The revolver retrieved by Mr. Flores-Haro was unloaded.  Erica Hurley testimony, Plaintiffs' Trial Exhibit 214,  Perpetuation Deposition Tr., 18:7 to 20:6, and Plaintiffs' Trial Exhibit 201 (crime scene photo of revolver's empty cylinder).   Mr. Flores-Haro neither pointed nor fired his revolver.  Adalberto Flores-Haro testimony, Tr. 724:5-9.

Plaintiff Adalberto Flores-Haro sustained four or five separate gunshot wounds.  One or possibly two wounds to his abdomen, a wound to his right shoulder, a wound to the middle finger, index finger and thumb of his right hand, and a severe wound (blast injury) to his right forearm at the elbow.  As noted above the wounds to the abdomen and the elbow were devastating and caused permanent injury.  The bullet which struck the right forearm at the elbow did not pass through any intervening object or barrier.  Gaylen Warren testimony, Christopher Young testimony. The bullet(s) which struck the abdomen struck or passed through the southeast wall of plaintiffs' front porch.  Gaylen Warren testimony, Christopher Young testimony; Andrew Michaels testimony, Plaintiffs' Trial Exhibit 99, Perpetuation Deposition Tr. 26:14-18.

---

possible to draw two inconsistent conclusions from the evidence." *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (quotation marks omitted).

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

The gunshot wounds to Mr. Flores-Haro's right forearm/elbow and right hand position his right arm and hand down and slightly away from his right side when those bullets struck him and support the inference that, at that moment in time he was facing the shooting officers, his body position was roughly perpendicular to the direction of fire. Samuel Freeman testimony.

The gunshot wounds to Mr. Flores-Haro's abdomen and related physical evidence (e.g., fat tissue and blood spatter on porch wall) support the inference that, at the moment he was shot in the abdomen, he was within one foot of and roughly perpendicular to the east wall of his front porch. Meaning, in other words, that by that point in time he had turned to his left (towards his front door) relative to the position he was in when he received the wounds to his right forearm/elbow and right hand. Gaylen Warren testimony; Christopher Young testimony.

From the foregoing evidence a rational juror could draw the following conclusions: (1) that the gunshot wounds to the right forearm/elbow were the first injuries to occur and were caused by defendants' negligence in one or more of the particulars (e.g., failure to identify themselves) which plaintiff allege created a foreseeable risk that defendants may have to act in self-defense against a citizen mistaking them for intruders; and (2) that the gunshot wounds to the abdomen were caused by defendants' battery because plaintiff was retreating when those bullets were fired and the circumstances that initially necessitated acts of self-defense had dissipated.

Separate acts of negligence and battery produced separate causes of distinct and devastating injury to different parts of Mr. Flores-Haro's body. The separate damages awarded for battery and negligence do not represent a double recovery for a single injury.

## III.    Oregon Tort Claim Cap[7]

As applied in this case, the Oregon Tort Claims Act (OTCA), ORS 30.265-.300, is

---

[7]  Responding to Hillsboro's section 3, pp. 10 of its Objections and Washington County's Section C-F, pp. 9 of its objections.

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

violative of the remedies clause of Article I, section 10 of the Oregon Constitution.[8] It is also violative of the right to a jury trial embodied in Article I, section 17, discussed, *post*.[9] These are not violations to be lightly dismissed.

> "The remedy clause precludes the legislature from denying remedy for personal injury, and the right to jury trial precludes the legislature from eliminating or interfering with the jury's role in restoring that injury. But those two provisions also do more. They define what we mean when we use the word justice, and they make jurors its defender. Article I, section 10, stems from Lord Coke's interpretation of the Magna Carta and his understanding that justice must be 'full, because justice ought not to limp.' 359 Or. at 200 (translating Edward Coke, *The Second Part of the Institutes of the Laws of England* 55-56 (1797 ed)). Article I, section 17, guarantees a right to a jury trial that is one of the most important safeguards against tyranny which our law has designed.' *Lee v. Madigan*, 358 U.S. 228, 234, 79 S.Ct. 276, 3 L.Ed.2d 260 (1959)."

*Horton v. OHSU*, 359 Or. 168, 287 (2016) (Walters, J. Dissenting). Justice Walters also went on to observe that "Section 10's guarantee that "every" person "shall" have remedy for personal injury. . .is written in absolute terms and should not be subject to balancing." *Id*. at 294. "the constitutional right to remedy, which this court described in *Gearin v. Marion County*, 110 Or. 390, 396, 223 P.929 (1924), as "one of the most sacred and essential of all the constitutional guaranties" without which "a free government cannot be maintained or individual liberty be preserved[.]" 359 Or. at 294. Thus, "'[a] court cannot "'balance' one person's rights with cumulated majoritarian interests" without "fl[ying] in the face of the premise of constitutionally guaranteed individual rights against the state." *State v. Tourtillott*, 289 Or. 845, 881, 618 P2d 423 (1980) (Linde J., dissenting)." 359 Or. at 296.

### A. Generally

The OTCA waives the immunity of public bodies from lawsuits and limits the amount of

---

[8] **Article I, Section 10. Administration of justice.** No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and *every man shall have remedy by due course of law for injury done him in his person, property, or reputation.*— (emphasis added)

[9] **Article I, Section 17. Jury trial in civil cases**. In all civil cases the right of Trial by Jury shall remain inviolate.

Creighton & Rose, PC   ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

damages that a plaintiff can recover for the torts of the officers, employees or agents of a public body. This limitation implicates the remedies clause of Article I, section 10, since, in many cases the limit prohibits the recovery of a substantial portion of a plaintiff's damages. The constitutional validity of the OTCA, at least insofar as it imposes caps on damages, is based largely on the notion that government bodies, as opposed to government employees (*see Gearin,* 110 Or. at 396-7)[10], are, as a general rule, immune from all or some civil liability for tort actions. Thus, the waiver of immunity by a public body – allowing a suit against the public body – may be a legitimate trade-off (the vaunted *quid pro quo*) for the limitations on the liability of the body, such that the limits imposed by the cap(s) *may* provide a sufficient remedy, that, although incomplete, nonetheless satisfies the substantial remedy requirement of Article I, section 10. That depends, of course, on the relationship between the amount of the damage award and the amount of the cap. In sum, the legislature is not categorically prohibited from imposing damage caps so long as the plaintiff is not left with an inadequate sum as "remedy by due course of law for injury done him." *See Horton,* 359 Or. at 220-1.

### B. Substantial Remedies and *Quids pro quo*

Assuming plaintiff's damages are to be capped at all, the crucial question is whether the cap, as applied to plaintiff's damages, as evidenced by the jury's verdict, is a substantial remedy in the contemplation of Article I, section 10.

The Court in *Horton* acknowledged that the cap in that case provided plaintiff with an incomplete remedy. However, the Court concluded that, in order to get to that verdict against the OHSU, the legislature had to have waived the hospital's constitutionally recognized interest in sovereign immunity, which would have precluded any lawsuit for any damages at all. The Court held that the waiver of sovereign immunity was of substantial benefit to the plaintiff, and to all

---

[10] "The state is immune from suit because it is a sovereign. By design, sovereign immunity does not extend to state employees; state employees, including those who perform important, high-risk functions, are liable for their torts." 110 Or. at 396.

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

other plaintiffs, and, as such, was a sufficient *quid pro quo* to uphold the limitation on recovery in the OTCA, which was found, in that case, to have provided plaintiff with a "substantial remedy" and was therefore not inconsistent with the requirements of Article I, section 10.[11]

The present case presents one of the circumstances that the Court did not consider, namely, that of a municipal defendant. If the waiver of immunity is the constitutional justification for the limitation of damages, the *quid pro quo*, it is not certain what has actually been waived.

At common law (at the time of the passage of OTCA), cities were immune from liability for the torts committed by their agents in the course of governmental, as opposed to proprietary functions.[12] While the distinction between the two has been troublesome and occasionally obscure, to say the least, *see Hale v. Port of Portland,* 308 Or. 508, 519, 783 P.2d 506 (1989), it is fair to say that governmental functions are those necessarily inherent in the entity's existence as a governing body, and, while the lines are uncomfortably blurred at the intersection, proprietary functions are its corporate functions. *See, e.g. Noonan v. Portland*, 161 Or. 213, 221, 88 P.2d 808 (1939).

In this case, that functional distinction suggests that the City of Hillsboro, in letting its officers out to the TNT, is in fact performing precisely that kind of proprietary function, since it

---

[11] The court in *Horton* was explicit that its decision was based "on the presence of the state's *constitutionally* recognized interest in sovereign immunity, the *quid pro quo* that the Tort Claims Act provides, and the tort claims limits in this case," *id.* at 225 (emphasis added), as well as the size of the cap in relation to the damages awarded. *Id.*, at n. 28. The Court expressed "no opinion on whether other types of damages caps, which do not implicate the state's constitutionally recognized interest in sovereign immunity and which are not part of a similar *quid pro quo,* comply with Article I, section 10. Those cases are not before us, and we leave their resolution to the customary process of case-by-case adjudication." *Id.* at 225-6.

[12] What immunity a city might have had was decidedly not sovereign immunity. *See Hale, id,* at 518-19, 530 ("Its nonliability for what past cases. . .termed 'governmental' as distinct from 'proprietary' functions is not derived from the 'sovereign immunity[.]'" Linde, J. concurring).

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

is effectively acting as a contractor for law enforcement services, and collects reimbursement for the provision of those services. See Declaration of Counsel, Ex 2. If that is the case, this was not something for which the City would have had immunity. Since there is no immunity to have been waived, the value of the *quid* is drastically reduced if not eliminated altogether.

Similarly, at common law, local public bodies were not liable for the intentional torts of their employees, not as a matter of governmental immunity but as a matter of agency/*respondeat superior* analysis. *See Eagle Point v. Hanscom*, 121 Or. 40, 43 (1927). Thus, any action for the battery against plaintiff would have had to be directed at the individual employees of the individual defendants, with no cap at all and no prohibition of punitive damages. The OTCA now effectively prohibits the suit against the individual,[13] but requires that the action be brought against the public body instead. In exchange, plaintiff gets capped damages and is precluded from seeking punitive damages. It would appear that this provides nothing at all by way of a *quid pro quo* to the plaintiff.[14] Any limitation on the pre-existing right to sue the individual public

---

[13] Under ORS 30.265(4), if the complaint alleges damages in excess of the cap, the individual officer may be sued as well. However, in that case, the damages awardable against the officer and the public body taken together is still subject to the limits of the cap for a single defendant and a single occurrence. That provision is not applicable to the present case which is brought in Federal court, in which the amount of damages are not typically required to be pled in the complaint.

[14] It was suggested by the Court in *Horton*, by way of *dicta*, that another benefit to a plaintiff may be that, by requiring the suit to be brought against the public body, he gets to sue a presumably solvent defendant. *Id* at 224. That presumption is based on the assumption that cops – and other employees of local government – are relatively judgment proof. (In these times of better-paid city employees, benefits packages and PERS, that assumption may not be warranted.). Whether that is the case or not, as Justice Walters wrote in dissent in *Horton*, *id*. at 293,

> "a plaintiff's ability to *collect* a judgment is not a benefit of constitutional dimension and can have no place in the court's constitutional analysis. *See Oregonian Publishing Co. v. O'Leary*, 303 Or. 297, 305, 736 P2d 173 (1987) (witness's interest in secrecy is not of constitutional dimension in Article I, section 10, analysis); *Mattson v. Astoria*, 39 Or. 577, 580-81, 65 P 1066 (1901) (when plaintiff has claim against individual employee, plaintiff is not wholly without remedy); *Batdorff v. Oregon City*, 53 Or. 402, 408-09, 100 P 937 (1909)

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

employees is inherently not a substantial remedy.

### C. Substantiality of the judgment

Even if there may have been a *quid pro quo* underlying the cap, that fact is not dispositive. As the court noted in *Horton*, another necessary factor to be considered is the amount of the damage award measured against the limitation of the cap. *Id*. at 224-5, and n. 28. In this case, plaintiff received a verdict of $7M, which, when reduced by the contributory negligence finding, totalled $5.11M. *See* Exhibit 1. Whether a judgment will provide plaintiff with a substantial remedy depends largely upon its relationship to the award. The Court in *Horton* noted that the decision needs to be made on a case by case basis. *Id*. at 225.

In cases subsequent to *Horton*, the court appeals has held that a capped award $1,839,090 out of the $6,199,090 awarded by the jury, approximately 30% would not have been a substantial remedy. *Vasquez v. Double Press Mfg*., 288 Or. App. 503, 406 P.3d 225 (2017). Similarly, in *Rains v. Stayton Builders Mart, Inc*., 289 Or. App. 672, 410 P.3d 336 (2018), a capped judgment of $4.4M was found not to be a substantial remedy as against a $6.27M verdict. These cases, to be sure, but were applying the non-economic damage cap of ORS 31.170, and neither of them included a reduction for the existence of a *quid pro quo*. They, however, decided on remand from the Supreme Court after *Horton*, and decided in *Horton*'s light. Given the meagreness of any *quid pro quo* in this case, as discussed above, the analyses in Rains and Vasquez are more rather than less illuminating.

### D. Right to a jury trial

Nothwithstanding the Court's decision in *Horton*, the application of the OTCA deprives plaintiff of his right to a jury trial. As was cogently addressed by Justice Walters, in dissent in *Horton*, 359 Or at 296-307, the Court was wrong in overruling its previous decisions, which seemed unequivocal, and holding that Article I, section 17, was merely a guarantee of procedural

---

(same)." (emphasis added).

Creighton
& Rose, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

access to the courts and not a guarantee of the right to a jury's adjudication of the facts. In both

*Molodyh v. Truck Insurance Exchange*, 304 Or. 290, 744 P.2d 992 (1987), and *Lakin v. Senco*

*Products, Inc.*, 329 Or. 62, 82, 987 P.2d 463 (1999), the Court had held that Article I, section 17,

precluded the legislature from limiting the jury's fact-finding function, which includes a finding

of damages. That same preclusion was required by Article VII (Amended), section 3, which

provides:

> "In actions at law, where the value in controversy shall exceed $750, the right of
> trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-
> examined in any court of this state, unless the court can affirmatively say there is
> no evidence to support the verdict."

That provision had been held to prohibit a court from setting aside a jury's verdict because it

exceeded some sum, that, in the court's view, rendered it excessive. *Van Lom v. Schneiderman,*

187 Or. 89, 95-97, 210 P.2d 461 (1949). It also precludes an appellate court from setting aside or

modifying a jury's factual determination of damages following a fair trial. *Tenold v.*

*Weyerhaeuser Co.*, 127 Or. App. 511, 523, 873 P.2d 413 (1994). The court's setting aside the

jury's finding of damages would violate both Article VII (Amended), section 3, and Article I,

section 17, as well as the command of Article I, section10. The legislature cannot require a court

to do what the constitution plainly forbids; "a state legislative interest, no matter how important,

cannot trump a state constitutional command." *State v. Stoneman*, 323 Or. 536, 542, 920 P2d 535

(1996). Such a legislative instruction constitutes an unlawful interference with the jury's fact-

finding function. As Justice Walters concluded, the right to a jury trial guaranteed by the Oregon

constitution "is more than a right to have a jury empanelled; it is a right to have a jury perform

its factfinding function without interference." 359 Or. at 306. The damage caps in the OTCA do

precisely that and cannot be allowed to stand as an impediment to the effectuation of the jury's

verdict.

The imposition of damage caps also implicates the separation of powers mandate.

*Horton* recognized that a damages cap could violate some other provision of state or federal

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 17 – PLTFS' MEMORANDUM IN RESPONSE TO DEFS' OBJS
TO JUDGMENT AND MOT TO LIMIT AWARD

constitutions that imposes a substantive limitation on legislative action.  *See Horton*, 359 Or. at 250.  A damages cap violates Article III, section 1 of Oregon's Constitution which provides: "Section 1. Separation of powers. The powers of the Government shall be divided into three separate branches, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these branches, shall exercise any of the functions of another, except as in this Constitution expressly provided."  The current Tort Claim Act violates this provision by permitting the legislature to exercise the function of the judicial branch by interfering with and imposing limitations on the fact finding function of the jury and the judicial branch.

While Article IV, Section 24 states "Provision may be made by general law, for bringing suit against the State, as to all liabilities originating after, or existing at the time of the adoption of this Constitution; but no special act authorizeing [sic] such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed.—", this provision does not permit the legislature to impose *limits* on those liabilities.  Article IV, section 24, only permits the type of liabilities to be defined, not the amounts.  Imposition of limits by the legislature on the amount of the judgment rendered by the jury is by very definition a violation of the separation of powers doctrine.

"Whether 'undue interference' with the independent operation of the judicial branch occurs depends on whether the action of another branch 'unduly burden[s] the capacity of the judiciary to perform its core function.' A 'core function,' for separation of powers purposes, refers to 'an area of responsibility or authority committed to that * * * department.'" *Oregonians for Sound Econ. Policy, Inc. v. State Accident Ins. Fund Corp.*, 218 Or. App. 31, 49 (2007) citing *Rooney v. Kulongoski (Elections Division # 13)*, 322 Or. 15, 28, 902 P.2d 1143 (1995). Determining the amount of damages and the value of the damages are core functions of the judiciary.  To permit the legislative branch to interfere with the administration of justice in the judiciary is exactly the sort of "potential tyranny of concentrated power" in a single branch that

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

the separations of powers clause is designed to check.

**E. Which damage cap(s) to apply**

In the event the court determines that the damage caps of the OTCA do apply in this case, the question of how the caps are to be applied must be addressed.

The OTCA distinguishes between the state and local public bodies in terms of the size of the damage cap. *See* ORS 30.271(2) (State) and ORS 30.272(2) (local). The distinction is not insignificant: during the applicable time period the cap for the state ($1.7M) was three times the cap for local public bodies ($566,700).[15]

Whatever cap may be applicable to the defendant city derives from its existence as a local public body and is described in ORS 30.272. On the other hand, Washington County's liability

---

[15] The distinction may be violative of the equal privileges and immunities guarantee of Article I, section 20. Equality of privileges and immunities of citizens. "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." There are two true classes of people at issue here, subclasses of the broad class of people injured by the acts of public employees. The classes are those people who are injured by the tortious conduct of an employee of a local public body and those who are injured by the acts of a state employee. The person who is injured by a municipal employee is subject to a damage cap three times smaller that does the same person who suffers precisely the same injury from precisely the same tort at the hands of a state employee. Unlike other "nontrue classes" the courts like to discuss, a) plaintiff herein hasn't chosen to be a member of the class, and b) whether the plaintiff is in or out of the class – or whether the class exists at all – is not dependent on any legislative decision: the class wasn't 'created by the challenged law or government action itself and classes that are defined in terms of characteristics that are shared apart from the challenged law or action." Rather, the membership in this class exists in objective reality "apart from the challenged law or action": which government body employed the person  who was driving the car that hits a plaintiff is a variable independent of any legislative decision and is the sole determiner of one's membership in the class (although the challenged law certainly determines the monetary significance of the class membership). Such a class distinction, to be justified at all, must be justified by a rational basis. There is no rational basis for the distinction between those injured by a State employee and those injured by a City or County employee.  The harm to the injured person is identical.  Presumably, the legislature made the distinction based upon the resources of the Counties and Cities as compared to the resources of the State.  However, considering the fact that insurance coverage is readily available to Cities and Counties and in fact Washington County carries a $10 million policy for OTCA liability, this distinction is not rational. *See* Declaration of Counsel, Ex. 3.

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

cap is qualitatively different. If the underlying immunity that Washington County claims is indeed *sovereign* immunity, as urged by that defendant in its Memorandum, Dkt 369 at 8-9, then the county must necessarily be deriving that immunity from the fact that it is a state actor.[16]

"That the county is but the agent or instrumentality of the state, constituted and employed essentially for the promotion of its general government, and, therefore, subject to like rules and restrictions governing its liabilities as the state, there can be no controversy." *Seton v. Hoyt*, 34 Or. 266, 273, 55 P. 967 (1898). One of those rules and restriction recognized by the Court is that "neither the state itself, nor one of its counties, which are but instrumentalities of the state in exercise of its sovereignty, can be sued, unless upon express permission given by the legislative power in the form of a statute permitting the same." *Rapp v. Multnomah County*, 77 Or. 607, 609-610, 152 P. 243, 243-244 (1915) (emphasis added), *cited with approval Kern County Land Co. v. Lake County*, 232 Or. 405, 408 n. 1, 375 P.2d 817 (1962). *See also Municipal Sec. Co. v. Baker County*, 33 Or. 238, 344, 54 P. 174 (1898) ("The most important function of the county is to maintain a local government subordinate to, but as an arm of, the state."); *Hale v. Port of Portland, et al.*, 308 Or. at 517 (county "partake[s] fully of the state's immunity from suit."). Thus, Washington county, whose *sovereign* immunity has been waived by the OTCA, must be limited by the state liability cap in ORS 30.271, *viz.*, $1.7M.

**F. Number of Caps**

**1. Two defendants**

Defendant City of Hillsboro argues that the only party liable for anything is Washington County, and hence, there is but one damage cap (of $566,700) in the case.

a. This is contrary to the position the City took in its Trial Memorandum. Dkt 267 at 7 ("Conduct of Hillsboro and Washington County is to be decided separately"). *See also*

---

[16] It is only that state-derived immunity that has even arguable constitutional support. Exactly where in the Oregon Constitution the doctrine of sovereign immunity might have its origin is obscure at best.

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 20 – PLTFS' MEMORANDUM IN RESPONSE TO DEFS' OBJS
TO JUDGMENT AND MOT TO LIMIT AWARD

Defendants' Joint Motion in Limine No. 7, Dkt 281 at 6-9, in which the defendants seem to agree that both Hillsboro and Washington County are responsible for the torts of their own employees (Slade and McLeod, respectively). Insofar as Hillsboro is concerned, the court agreed, holding Hillsboro liable only for Slade's conduct. *See* Final Jury Instruction No. 22, Dkt 357.

b. Washington County, in its Memorandum, Dkt 369, asserts that plaintiff is limited by the OTCA damage cap, to a recovery of $566,700 from Washington County. *Id*. at 7. It concludes that plaintiff would thus be limited to an aggregate award of $1,113,400, against *both* defendants. *Id.*, at 8. This clearly contemplates a separate cap for each of the two defendants. Plaintiff agrees with Washington County that, to the extent that each defendant is subject to a cap, each defendant warrants its own separate cap consideration.

c. A separate damage cap for each defendant is required by the statutory language. ORS 30.272 establishes the damage caps under the OTCA for local public bodies. Significantly, the limitations are couched in terms of the singular. Subsection (1) provides: "The limitations imposed by this section apply to claims that:. . .(b) Are made against *a* local public *body*, . . .[and] (c) Arise out of a single accident or occurrence" (emphasis added). That language is echoed in subsection (2), which limits "liability of *a* local public *body*" for a single claimant to the scheduled amounts. (emphasis added). In subsection (3), the statute provides the schedule of limitations for multiple claimants, again, against *"a* local public *body.*" There is no reason that the singular should mean anything other than the singular. *See, e.g., Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) ("when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms."); *Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("It is, however, a cardinal principle of statutory construction that we must ''give effect, if possible, to every clause and word of a statute.'" (internal citations omitted)). The language of (3) also demonstrates that the legislature knew well

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

how to draft aggregating language and in this instance declined to do so. *See*, *e.g.*, *PGE v. Bureau of Labor and Industries*, 317 Or. 606, 614, 859 P.2d 1143 (1993) ("The legislature knows how to include qualifying language in a statute when it wants to do so."); *Suzuki v. Yuen*, 617 F.2d 173, 178 (9th Cir. 1980) ("The legislature knew how to require imminence when it wanted to.").

 d. This court has already decided that the statutes allowing mutual agreements between governmental agencies, ORS 190.476(2) and ORS 402.240, and the multi-agency agreement itself, are irrelevant to the question of the liability of the individual defendants, although the agreement may require indemnification as between the parties.

## 2. Two separate occurrences

 Each damage cap is for a *single occurrence*; separate occurrences require separate caps. ORS 30.272(1)(c) ("(1) The limitations imposed by this section apply to claims that: (c) Arise out of a single accident or occurrence[.]"); ORS 30.271(1)(c) (same).

 The question of what is and is not a separate occurrence was recently discussed by the Supreme Court in *Wright v. Turner*, 354 Or. 815 (2014) (in the context of insurance coverage). The Court basically held that "that determination depends solely on whether the chain of events that began with [defendants'] negligence was in some way interrupted (such as by time, distance, *cause*, or a combination of the three), such that a jury reasonably could conclude that the second collision constituted a second event, happening, or occurrence[.]" Here, the jury found that two separate legal causes, the negligence and the battery, were the causes of separate and distinct injuries and separate and distinct quanta of damages. In doing so, the jury necessarily found that there were two separate occurrences. *See* discussion *ante*, at §II (pp 7-12).

 Thus, Hillsboro is liable, separately, for both the negligence and battery necessarily ascribed to Slade. Washington County, for its part, is liable, separately, for the injuries caused as a result of negligence, as well as both batteries. Each of the separate causes requires a separate cap amount, should a cap amount be required.

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 22 – PLTFS' MEMORANDUM IN RESPONSE TO DEFS' OBJS
TO JUDGMENT AND MOT TO LIMIT AWARD

## IV. CONCLUSION

Plaintiff requests that a $5.1 million judgment be entered that reflects the jury's verdict in this action.  The jury's $5.1 million dollar award is to be afforded great deference and is supported by the evidence, including evidence of plaintiff's economic damages and permanent injury.  Entering a judgment less than $5.1 million would deprive plaintiff of a substantial remedy under Article I, section 10 of Oregon's Constitution and his right to a jury trial under Article I, Section 17 of Oregon's Constitution.  Moreover, plaintiff is not required to elect between claims or damages and the jury's verdict is consistent with a finding of separate claims for both battery and negligence and separate damages for each claim.

DATED this 2nd day of April, 2018.

CREIGHTON & ROSE, PC

_s/ Michael E. Rose_
MICHAEL E. ROSE, OSB #753221
BETH CREIGHTON, OSB #972440
DAVID D. PARK, OSB #803358
Attorneys for Plaintiffs

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill St. #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 23 – PLTFS' MEMORANDUM IN RESPONSE TO DEFS' OBJS
TO JUDGMENT AND MOT TO LIMIT AWARD