IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ADALBERTO FLORES-HARO et al.**,

    Plaintiffs,

    v.

**STEPHEN SLADE et al.**,

    Defendants.

Case No. 3:12-cv-01616-MO

OPINION AND ORDER

**MOSMAN, J.**,

This matter comes before me on four post-trial motions: Defendant City of Hillsboro's Objections to Plaintiffs' Proposed Form of Judgment [367], Defendant Washington County's Motion for Election of Remedies, Remittitur, and to Reduce Award Consistent with OTCA Limits [368], and Defendants' Motions to Alter or Amend Judgment [406, 412]. For the reasons below, these motions are resolved in part.

## BACKGROUND

### I. Factual Background

On the evening of March 13, 2012, officers from Washington County and the cities of Hillsboro and Portland started to execute a "high risk" search and arrest warrant in Columbia Villa, a neighborhood with a high incidence of drug- and gang-related activity. Adalberto Flores-Haro's home was next door to the target address and the officers were on and around his property. Two officers went into Mr. Flores-Haro's backyard when the operation started. Other

1 – OPINION AND ORDER

officers moved through an alleyway adjacent to his home.  Neither the officers nor the police departments asked for permission to be on Mr. Flores-Haro's property, nor did they warn him of their plans.

Mr. Flores-Haro and his family, unaware of the police operation, became scared that a home invasion was afoot.  Plaintiff Alma Granado-Milan, Mr. Flores-Haro's wife, heard their dogs barking and went downstairs to investigate.  She alerted her husband that there was someone in the backyard after she saw an unfamiliar person through the blinds and heard a noise by their fence.  Mr. Flores-Haro then saw a shadowy figure running towards his front yard and went outside to confront the intruder.  Upon exiting his house, Mr. Flores-Haro saw more shadowy figures in the area.  Hoping to intimidate whomever was circling his house, Mr. Flores-Haro yelled inside to his son for a .44 caliber handgun.  When his son could not find the gun, Mr. Flores-Haro went inside to get it himself.  After retrieving the gun, Mr. Flores-Haro took one or two steps past his front door with the gun in his hand before he was shot by the officers.  He sustained wounds to his right elbow, right hand, and abdomen.

After being shot, Mr. Flores-Haro sought protection inside his home, stating that he was terrified whoever had shot him would try to hurt his family.  His children were downstairs screaming while Mr. Flores-Haro lay on the ground clutching his wounds.  The police ordered the family out of the house at gunpoint, forcing them to step over their father, who was now unconscious.  Mr. Flores-Haro regained consciousness when the police officers dragged him outside by the arms.  He was in a coma for almost two weeks after the shooting and was left with permanent injuries, pain, and substantial physical limitations.

After the incident, the officers who shot Mr. Flores-Haro reported that they had been fired upon.  No casings or bullets from Mr. Flores-Haro's gun were recovered from the scene.

## II. Procedural Background

Mr. Flores-Haro, along with his wife and their children, brought suit against the two officers who shot him and the officers' employers, Washington County and the City of Hillsboro. Asserting Fourth Amendment violations, Mr. Flores-Haro and his family brought claims against the officers and the municipalities under 42 U.S.C. § 1983. Plaintiffs also brought state law claims of battery, negligence, and intentional infliction of emotional distress against the two municipalities. After interlocutory appeal, the § 1983 claims were dismissed on the basis of qualified immunity, leaving only the state law claims against Washington County and Hillsboro. *See Flores-Haro v. Slade*, 686 F. App'x 454 (9th Cir. 2017).

At trial, Plaintiffs' counsel submitted evidence of Mr. Flores-Haro's medical bills related to the shooting, which totaled $498,006.79. Pl. Ex. 25. In his closing argument, Plaintiff's counsel stated that "[t]he only type of economic damages are Mr. Flores-Haro's medical bills. The amount of those bills, reasonableness and necessity, is not in dispute; and that's in Exhibit 25 before you." Trial Tr. 1695. Plaintiffs' counsel also presented evidence of Mr. Flores-Haro's ongoing pain, permanent disability, and the possibility of an elbow replacement surgery when Mr. Flores-Haro is older.

At the conclusion of Plaintiffs' evidence, Hillsboro argued for judgment as a matter of law on the ground that the negligence and battery claims were inconsistent. Trial Tr. 826. Because there was only one alleged harm—the shooting—Hillsboro argued that Plaintiffs' negligence claim was foreclosed by their battery claim. *Id.* In support of this argument, Defendants have asserted that "there can be no unintentional, intentional conduct." Hillsboro's Reply Obj. Limit J. [394] at 9.

I denied the motion for judgment as a matter of law, finding that the battery claim and the negligence claim rested on distinct factual predicates. The jury returned a verdict in favor of Mr. Flores-Haro. The jury found Washington County and Hillsboro liable for battery, awarding $1,500,000 in economic damages and $1,000,000 in noneconomic damages. The jury also found liability for negligence, awarding Mr. Flores-Haro $500,000 in economic damages and $4,000,000 in noneconomic damages, but also finding Mr. Flores-Haro comparatively negligent. The jury found Washington County 50% negligent, Hillsboro 8% negligent, and Mr. Flores-Haro 42% negligent. The jury did not find Defendants liable for intentional infliction of emotional distress to Mr. Flores-Haro's family members. In total, after accounting for Mr. Flores-Haro's comparative negligence, the jury awarded $5,110,000 to Mr. Flores-Haro on the battery and negligence claims.

## LEGAL STANDARDS

"Under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), when a federal court exercises diversity or pendent jurisdiction over state law claims, 'the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.' " *Felder v. Casey*, 487 U.S. 131, 152 (1988) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)). State law limitations on damage awards are outcome determinative and must be applied under *Erie*. *See Guaranty Trust Co.*, 326 U.S. at 109. This means that Oregon law limiting damages must be applied to the state law claims in this case. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 429–31 (1996).

The Oregon legislature enacted Or. Rev. Stat. § 31.710 as a "statutory rule of recovery for compensatory damages for bodily injuries caused by tortious conduct." *White v. Jubitz*

*Corp.*, 182 P.3d 215, 218 (Or. App. 2008), *aff'd*, 219 P.3d 566 (Or. 2009). Or. Rev. Stat. § 31.710 defines "economic damages" as

> objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services . . . .

Or. Rev. Stat. § 31.710(2)(a). "In every case actual damages sustained must be established by evidence upon which their existence and amount may be determined with reasonable certainty. Speculative damages are never allowed." *Merchs. Paper Co. v. Newton*, 292 Or. App. 497, 506 (2018) (quoting *Parker v. Harris Pine Mills, Inc.*, 291 P.2d 709, 713 (Or. 1955)).

A court's determination that a jury award should be reduced implicates the doctrine of remittitur. "[T]he entry of judgment for a lesser amount than that awarded by the jury, without the offer of a new trial, 'cannot be squared with the Seventh Amendment' when the reduction is premised on a finding that the evidence does not support the award." *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1370–71 (Fed. Cir. 2008) (quoting *Hetzel v. Prince William Cty.*, 523 U.S. 208, 211, (1998)). A district court's finding that damages are excessive therefore requires either acceptance of remittitur by the plaintiff or a new trial.

When awards are duplicative, a plaintiff must elect which remedy to bring to judgment. *See Eulrich v. Snap-On Tools Corp.*, 853 P.2d 1350, 1361 (Or. App. 1993), *cert. granted, judgment vacated on other grounds*, 512 U.S. 1231 (1994). "The doctrine of election of remedies is designed to prevent double recovery for a single wrong." *Int'l Union of Operating Eng'rs v. Cent. Nat'l Life Ins.*, 530 P.2d 838, 840 (Or. 1975). Ordinarily an election is not made

until a judicial proceeding has gone to judgment on the merits." *Colonial Leasing Co. of New England v. Tracy*, 557 P.2d 639, 640–41 (Or. 1976) (citation omitted).

## DISCUSSION

I.   **Whether the Jury Awarded Excessive Economic Damages**

Oregon courts have provided guidelines for the evidence needed to show "objectively verifiable monetary losses" under Or. Rev. Stat. § 31.710(2)(a). On one hand, Oregon courts have emphasized that "the legislature defined 'economic' damages not as 'objectively verif*ied*' monetary losses, but as 'objectively verif*iable*' monetary losses. . . . [T]he key is the extent to which damages are *capable* of verification by objective facts, not the extent to which they are verified at trial." *DeVaux v. Presby*, 902 P.2d 593, 597 (Or. App. 1995). On the other hand, some proof is required at trial. "[A] claim for economic damages necessarily rests on some quantum of evidence that would allow the jury to find that certain events probably would have occurred, or that certain conditions probably would have existed, had it not been for a defendant's wrongful conduct." *Tadsen v. Praegitzer Indus.*, 928 P.2d 980, 984 (Or. 1996).

In the context of reasonable medical charges, "a plaintiff need not even have received all of the necessary care nor have been billed for those services by the time of trial to have 'incurred' expenses under ORS 31.710(2)(a)." *White v. Jubitz Corp.*, 182 P.3d 215, 218 n.3 (Or. App. 2008), *aff'd*, 219 P.3d 566 (Or. 2009). But "a plaintiff seeking damages for medical expenses must establish the reasonableness of medical costs, through testimony or other evidence, beyond the existence of a medical bill." *Id.* at 218.

At trial, Plaintiffs' counsel stated that economic damages were limited to Mr. Flores's medical bills. Now, after the jury awarded economic damages in excess of those bills, Plaintiffs' counsel argues that the award is justified because the jury was presented with evidence of the

6 – OPINION AND ORDER

need for future medical procedures. In particular, Plaintiffs' counsel argues that the jury heard expert testimony that Mr. Flores-Haro could have elbow replacement surgery at some point, but that he was too young for that surgery at the time of the trial. Pl.'s Resp. Mot. Limit Award [392] at 1–5; Trial Tr. 510. Plaintiffs also note that there was a jury instruction regarding Mr. Flores-Haro's probable life expectancy. Pl.'s Resp. Mot. Limit Award [392] at 1–2. At oral argument, Plaintiffs' counsel posited that the jury could have anticipated the need for future surgeries from evidence of Mr. Flores-Haro's long-term injuries and extrapolated an award from the cost of Mr. Flores-Haro's emergency surgeries.

Although Plaintiffs are correct that Oregon caselaw allows for the recovery of future medical expenses, *see Clarke v. OHSU*, 175 P.3d 418 (Or. 2007), Plaintiffs failed to present any evidence of the "reasonableness" of such expenses or any estimate from which the jury could have fashioned an award for future medical treatments. While the jury heard expert testimony that Mr. Flores-Haro might have elbow replacement surgery in the future, the jury did not have any evidence of the cost. Therefore, I find that the jury did not have enough information to fashion an award for future medical expenses or determine what award would be reasonable.

Based on the insufficiency of the evidence for future medical expenses and the failure to plead economic damages other than medical bills already incurred, I conclude that the jury's economic damages award must be limited to the medical costs presented at trial.

## II. Whether Plaintiffs' Claims Are Inconsistent

The jury awarded $1,000,000 in noneconomic damages on the battery claim and $2,040,000 in noneconomic damages on the negligence claim, after reducing the award to account for Mr. Flores-Haro's comparative negligence.

Defendants argue that Mr. Flores-Haro must choose between the negligence and battery awards because the theories of recovery are inconsistent. Defendant Hillsboro argues that this case is akin to *Denton v. Arnstein*, 250 P.2d 407 (Or. 1952). In *Denton,* a car accident case, the plaintiff brought one claim that the defendant willfully rammed her car and one claim that the defendant negligently rammed her car. *See id.* at 413. The Oregon Supreme Court stated that "[t]he former is intentional and wilful; the latter unintentional" and decided that the plaintiff could not proceed on both causes because they were inconsistent. *Id.* at 415.

This case is different. In *Denton*, the conduct and the harm were the same for both claims. Unlike *Denton*, the two claims in the present case rest on different predicate facts. The predicate facts for the negligence claim were the duty and breach of a standard of care causing the shooting. The predicate for the battery claim was the shooting itself. It would have been possible for the jury to find that Mr. Flores-Haro suffered injuries attributable both to negligence and to battery. A jury may award damages for the same conduct on different legal theories when multiple injuries are alleged. *See, e.g.*, *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2nd Cir. 1995); *Gentile v. County of Suffolk*, 926 F.2d 142, 153–54 (2nd Cir. 1991). Therefore, I do not find that the negligence claim and the battery claim are inconsistent simply because one is intentional and the other is unintentional. But the fact that the same harm—the shooting—is an element of both claims presents a different problem: the possibility that the jury impermissibly found two separate harms.

III. **Whether the Jury Impermissibly Found Two Separate Harms**

In its motion for judgment as a matter of law at the close of Plaintiffs' case, Defendant Hillsboro argued that the claims for negligence and battery were inconsistent. I found the cases cited in support of that motion distinguishable, as I have done again in the current iteration of the

same argument. At trial, I determined that the best prophylaxis for inconsistent or duplicative damage awards was careful construction of the verdict form. The verdict form required the jury to specify the damage awards associated with each claim for which they found Defendants liable and then "Adalberto Flores-Haro's total damages from all his claims, if any." I instructed the jury that the "total damages" award need not equal the sum of the damages for each claim: "[I]f you were to find that Mr. Flores-Haro suffered the same or overlapping damages from the different claims, then your answer to [total damages] might be lower than the total of your answers to [battery], [negligence], and [intentional infliction of emotional distress]." Resp. Juror Note C [363].

The jury found damages of $2,500,000 for Defendants' negligence, $4,500,000 for Defendants' battery, and $7,000,000 in total damages. Verdict Form [360] 2–3. By finding damages for the negligence claim that were different from damages for the battery claim, the jury necessarily found different harms. The damages in this case were compensatory and the jury was only presented with evidence of one harm: the shooting. Compensating Mr. Flores-Haro differently under the two theories means that the jury compensated him for different harms.

At trial, Plaintiffs' counsel stated that the shooting was the harm for both the battery claim and the negligence claim. Trial Tr. 802. Plaintiffs' counsel stated that the battery and negligence claims were "alternative theories of liability" that were not inconsistent because different facts had produced the same harm. *Id.* Now, arguing that the jury's damage awards were based on evidence presented at trial, Plaintiffs' counsel advances a theory that different bullets are attributable to different causes of action. Pls.' Resp. Mot. Limit Award [392] at 9–11. While plausible at first blush, this theory was not submitted to the jury. In addition, at oral argument, Plaintiffs' counsel was unable to identify any appreciable separation in time or

location between the shots that would have enabled the jury to separate the harm attributable to negligence from the harm attributable to battery.

The shooting was the only harm that was proven at trial in this case. That harm was not greater because Mr. Flores-Haro can recover under more than one theory. The jury's separation of the total damages award into component parts requires me to conclude that the verdict consisted of damages for two harms. Because both Plaintiffs' litigating position and the evidence presented at trial only established one harm, I find that there was no evidence to support the jury's verdict awarding Mr. Flores-Haro damages for two harms.

**CONCLUSION**

For the reasons stated above, I find that Plaintiffs must elect which remedy to pursue: either the award for battery or the award for negligence. In either case, because the economic damages awards under both claims are in excess of the medical expenses presented to the jury, Plaintiffs must also decide whether to accept remittitur of $498,006.79. If Plaintiffs decline to accept the remittitur, I will order a new trial on the issue of damages. The deadline for Plaintiffs to elect a remedy and accept remittitur is October 25, 2018.

To the extent that they request a reduction of economic damages and an election of remedies, the following motions are resolved in part: Hillsboro's Objections to Plaintiffs' Proposed Form of Judgment [367], Defendant Washington County's Motion for Election of Remedies, Remittitur, and to Reduce Award Consistent with OTCA Limits [368], and Defendants' Motions to Alter or Amend Judgment [406, 412]. Decision on any remaining requests in these motions, including further reduction of the jury's award in accordance with the Oregon Tort Claims Act, is reserved pending Plaintiffs' response to this opinion and order.

IT IS SO ORDERED.

DATED this 11 day of October, 2018.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge