IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ADALBERTO FLORES-HARO et al.,**

    Plaintiffs,

v.

**STEPHEN SLADE et al.,**

    Defendants.

Case No. 3:12-cv-01616-MO

OPINION AND ORDER

**MOSMAN, J.,**

This matter comes before me on several post-trial motions: Defendants' Motions to Alter or Amend Judgment [406, 412], the City of Hillsboro's Motion to Apply OTCA Damages Cap [366], and Washington County's Motion for Election of Remedies, Remittitur, and to Reduce the Award Consistant with OTCA Limits [368]. For the reasons below, and in conjunction with my October 11, 2018, Opinion and Order [447], these motions are GRANTED in part and DENIED in part.

## BACKGROUND

In my October 11, 2018, Opinion and Order, I required Plaintiffs to either accept remittitur reducing economic damages to the amount proven at trial or retry the issue of damages. In addition, because I found that the jury had impermissibly awarded damages for two harms when Plaintiffs had only proven one harm, I required Plaintiffs to elect recovery on only

1 – OPINION AND ORDER

one of the remedies. Plaintiffs accepted remittitur and elected to recover on the jury's award for Defendants' battery.

The remaining issues in this case are whether and how the provisions of the Oregon Tort Claims Act (OTCA), should further limit Plaintiffs' recovery. For the reasons stated below, I find that the OTCA applies to the claims in this case and limits Plaintiffs' recovery to $1,133,400.

## STANDARD OF REVIEW

Under *Erie Railroad Co. v. Tompkins*, a federal court sitting in diversity jurisdiction must apply state substantive law. *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415 (1996). The same choice of law principles required by *Erie* must also be applied by a court exercising supplemental jurisdiction over state law claims. *See In re Exxon Valdez*, 484 F.3d 1098, 1100 (9th Cir. 2007). Because the claims remaining in this case are state law claims, I must follow the decisions of the Oregon Supreme Court that address whether the OTCA violates the Oregon Constitution's remedy clause. *See Comm'r of Internal Revenue v. Bosch*, 387 U.S. 456, 465 (1967).

## DISCUSSION

As an initial matter, Plaintiffs have not disputed the applicability of the OTCA to the types of claims they presented. Rather, they dispute the constitutionality of the OTCA as applied to this case. I first address Plaintiffs' constitutional arguments and then address the parties' arguments regarding how the OTCA applies to the facts of this case.

A. The Oregon Constitution's Remedy Clause and "Substantiality"

Plaintiffs' first argument against limiting the jury's award in accordance with the OTCA is that application of the OTCA's limits would violate the Oregon's Constitution's remedy

clause. The remedy clause ensures that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation." Or. Const. art. I, § 10. The Oregon Supreme Court has stated that the remedy clause "limits the legislature's substantive authority to alter or adjust a person's remedy for injuries to person, property, and reputation." *Horton v. Or. Health Sci. Univ.*, 376 P.3d 998, 1002 (Or. 2016).

The Oregon Supreme Court has decided that the legislature may limit the size of a damages award, but the "substantiality of the legislative remedy can matter in determining whether the remedy is consistent with the remedy clause." *Horton*, 376 P.3d at 1028. While the size of the OTCA limit relative to a jury's original award is important, whether a remedy is "substantial" also depends on the existence of other factors, such the legislature's rationale in limiting damages. *Id.* at 1027. Given these considerations, the Oregon Supreme Court decided in *Horton* that OTCA limits on the damages available from a state employee did not violate the Oregon Constitution's remedy clause. *Id.* at 1030. But the court limited its holding in *Horton* to the facts of that case. *Id.* The court stated that the significant factors in the case were the state's interest in sovereign immunity, the legislative rationale motivating the tradeoffs in OTCA's scheme, and the ratio of OTCA limit to the original jury award. *Id.*

    i.   <u>Sovereign Immunity and the OTCA's Quid Pro Quo</u>

Although state employees were never protected by the state's sovereign immunity, the court in *Horton* decided that the substantiality of an award should be assessed in light of the fact that the OTCA "extended the assurance of benefits to some while limiting the benefit to others." *Id.* at 1027. This quid pro quo in *Horton* was achieved by limiting the damages available in suits against state employees but allowing plaintiffs to sue the state. *Id.* at 1028–30. If not for the OTCA, the state would be exempt from suit under the doctrine of sovereign immunity. *Id.*

As a "state instrumentality," Washington County is entitled to "partake fully of the state's immunity from suit." *Hale v. Port of Portland*, 783 P.2d 506, 511 (Or. 1989) *abrogated by Smothers v. Gresham Transfer, Inc.*, 23 P.3d 333 (2001), *reaffirmed by Horton*, 376 P.3d at 1027. Therefore, *Horton*'s analysis of the interest in sovereign immunity and the legislative rationale in establishing a quid pro quo based on state sovereign immunity applies equally to Washington County in this case. If the award in this case is "substantial" under the third central factor in *Horton*—the ratio of the OTCA limit to the jury's award—then application of the OTCA limit in this case does not offend the remedy clause, at least with respect to Washington County. The City of Hillsboro, however, falls outside the ambit of *Horton*'s narrow holding. The City of Hillsboro does not have the same interest in sovereign immunity, which was a central feature of the court's decision in *Horton*. 376 P.3d at 1030.

Although the City of Hillsboro has not exchanged sovereign immunity for a limit on tort claims, the Oregon Supreme Court has held that the OTCA's limits on municipal liability enact a similar quid pro quo. *Hale*, 783 P.2d at 515. While *Horton* focused on the state's waiver of sovereign immunity, *Hale* evaluated the OTCA in light of the elimination of immunity for governmental acts. At common law, municipal corporations could be sued for acts that were considered "proprietary." *Hale*, 783 P.2d at 512. Municipalities enjoyed immunity from suit only for "governmental" acts. *Id.* But the OTCA did not adopt this distinction; although damages are limited, municipal corporations are liable for torts that arise out of both proprietary and governmental functions. *Id.* Eliminating the need to distinguish between governmental and proprietary functions conveyed a benefit that was counterbalanced by limiting the size of the award that could be recovered. *Id.* In *Hale*, the Oregon Supreme Court determined that this quid

pro quo did not offend the remedy clause of the Oregon Constitution. *Id.* at 515. As a result, the court found that the OTCA's limits could be applied to an award against City of Portland. *Id.*

For claims against the City of Hillsboro, the OTCA enacts the same quid pro quo that was evaluated in *Hale*. In both cases, the OTCA limits recovery but allows plaintiffs to bring suit without distinguishing between governmental and proprietary functions. And the elimination of the governmental–proprietary distinction in the OTCA provides Plaintiffs in this case with a significant benefit. The battery against Plaintiff Adalberto Flores-Haro occurred during a police operation, which is usually considered to be a governmental function. *See, e.g., Noonan v. City of Portland*, 88 P.2d 808, 812 (Or. 1939), *abrogated by Smothers v. Gresham Transfer, Inc.*, 23 P.3d 333 (2001), *reaffirmed by Horton*, 376 P.3d at 1027. Under the OTCA, Plaintiffs do not need to show that the battery resulted from a proprietary function. Following the authority of *Hale*, application of the OTCA to the City of Hillsboro does not violate the Oregon Constitution's remedy clause so long as the award satisfies the third element in *Horton*.

    ii. <u>Quantitative Substantiality</u>

The Oregon Supreme Court has decided several cases that provide useful guideposts for evaluating whether an award limited by the OTCA is quantitatively "substantial." In *Horton*, the court upheld a limitation of the plaintiff's recovery to 25% of the jury's award. Although the jury's award was $12,000,000, the court found that a $3,000,000 limit was not insubstantial "in light of the overall statutory scheme, which extends an assurance of benefits to some while limiting benefits to others." *Horton*, 376 P.3d at 1030. In *Hale*, the court concluded that a $100,000 limit on a $600,000 jury award, a 17% ratio, was a substantial remedy. Finally, in *Howell v. Boyle*, 298 P.3d 1 (Or. 2013), the Oregon Supreme Court decided that a $200,000 OTCA limit was a substantial recovery when the jury awarded $507,500 in damages, a 39%

ratio. The court also decided in *Howell* that a remedy need not even wholly compensate a plaintiff for his injury in order to be considered substantial. *Id.* at 11.

In only one case has the Oregon Supreme Court decided that an award limited by the OTCA was insubstantial. *See id.* at 10. In *Clarke v. Oregon Health Sciences University*, the court concluded that the OTCA's $200,000 limit was insubstantial in comparison the jury's award of $12,000,000 in economic damages and $17,000,000 in total damages, a 1% ratio. 175 P.3d 418, 434 (Or. 2007).

Plaintiffs cite two cases decided after *Horton* in which Oregon courts have decided that limits on jury awards did not provide plaintiffs with substantial remedies: *Vasquez v. Double Press Manufacturing, Inc.*, 406 P.3d 225 (Or. Ct. App. 2017) and *Rains v. Stayton Builders Mart, Inc.*, 410 P.3d 336 (Or. Ct. App. 2018). These cases do not offer useful comparisons. Unlike the present case, *Vasquez and Rains* did not involve government entities or the OTCA. The court in *Vaquez* made the importance of this distinction clear: "*Horton*, *Howell*, and *Hale*—all cases applying damages caps in the [OTCA]—are distinguishable because those cases explicitly took into consideration in their substantiality discussions the quid pro quo and constitutional implications of the waiver of sovereign immunity that is a part of the [OTCA]." 406 P.3d at 236.

### iii. Conclusion

For the reasons stated above, I find that the OTCA can be applied to the jury's award in this case without offending the remedy clause of the Oregon Constitution. The ratio between the OTCA limit and the jury's award must, however, fall within the range of values that the Oregon Supreme Court has determined to be "significant" recoveries in *Horton*, *Hale*, and *Howell*. The applicable limit and comparison of the limit to the jury's award are addressed below.

B. The Oregon Constitution's Right to Jury Trial and Separation of Powers

Plaintiffs offered two additional arguments regarding the constitutionality of applying the OTCA to this case. First, Plaintiffs argued that the OTCA limits violate the Oregon Constitution's guarantee that "no fact tried by a jury shall be otherwise reexamined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." Or. Const. art. VII, § 3. The Oregon Supreme Court decided this issue in *Horton*, finding that applying the OTCA's limits did not entail judicial reexamination of facts found by a jury. 376 P.3d 1046. Instead, the OTCA requires a court to apply a legal limit to the facts that are found by a jury, a function that does not violate Oregon's constitution. *Id.* Plaintiffs' argument that the majority in *Horton* was incorrect is unavailing, as I am required to follow state law as announced by the state's highest court. *Comm'r of Internal Revenue v. Bosch*, 387 U.S. 456, 465 (1967). Therefore, I find that applying the OTCA's limits to the jury's award does not violate article VII, section 3 of the Oregon Constitution.

Plaintiffs also argue that the OTCA violates article III, section 1 of the Oregon Constitution, which mandates the separation of powers between the branches of state government. In Plaintiff's view, the legislature improperly exercised a function reserved to the judicial branch by limiting jury awards under the OTCA. Pls.' Resp. [392] at 18. This argument is foreclosed by the fact that the legislature created the right to bring an action against a state instrumentality by waiving sovereign immunity in the OTCA. As discussed above, the OTCA created the same right with respect to the ability to bring suit against municipalities for governmental functions, such as the police action that was involved in this case. When creating a statutory right, a legislature has the discretion to prescribe remedies, even if "[s]uch provisions do, in a sense, affect the exercise of judicial power." *Northern Pipeline Constr. Co. v. Marathon*

7 – OPINION AND ORDER

*Pipe Line Co.*, 458 U.S. 50, 83 (1982). Therefore, I find that applying the OTCA to this case does not violate the separation of powers required by article III, section 1 of the Oregon Constitution.

C. Application of the OTCA to This Case

The parties disagree about how the OTCA should apply to the jury's award in this case. In particular, the parties disagree about 1) whether the "state" limitation or "local public body" limitation should apply, 2) whether separate limits should apply to Washington County and the City of Hillsboro, and 3) how many "accidents or occurrences" took place, as each accident or occurrence is limited separately.

i. State or Local Public Body Limit

In the case of personal injury, the OTCA establishes different limits for the liability of the state and the liability of "local public bodies." Or. Rev. Stat. §§ 30.271–.272. Limits on claims against the state are approximately three times as high as the limits on claims against local public bodies. *Id.* Plaintiffs assert that the "state" limit should apply to Washington County because the constitutionality of limiting the award against the county depends on the waiver of sovereign immunity that is derived from the state. *See* Pls.' Resp. [392] at 19–20. In essence, Plaintiffs argue that counties should be limited in the same way as the state since both entities exchange the same sovereign immunity for the limitation of awards under the OTCA. Although the premise for this analogy is true, there is no reason that the conclusion must necessarily follow. The Oregon legislature is not prohibited from establishing limits for counties that are different from the limits for the state, so long as the resulting remedy is substantial. *See Horton*, 376 P.3d at 1029 (describing the Oregon legislature's consideration of actuarial data in setting different limits).

For the purposes of the OTCA, the Oregon legislature defined "state" in a manner that precludes applying the state limit to Plaintiffs' claim against Washington County. The OTCA defines the "state" as: "(a) State government as defined in Or. Rev. Stat. 174.111; (b) The State Accident Insurance Fund Corporation; and (c) The Oregon Utility Notification Center." Or. Rev. Stat. § 30.260(5). Section 174.111 of the Oregon Revised Statutes defines "state government" as "the executive department, the judicial department and the legislative department." Washington County cannot be defined as "the state" under any of these definitions. Therefore, Washington County is a "local public body," which is defined as "any public body other than the state." Or. Rev. Stat. § 30.260(6).

  ii.  Separate Limits for Each Defendant

Under the OTCA, a separate limit applies to each liable public body. *See* Or. Rev. Stat. § 30.272(2). Despite the presence of two public bodies throughout the litigation of this case, the City of Hillsboro argues that only one OTCA limit should be applied to the jury's award. Hillsboro claims that this case involves only one public body because the Hillsboro employee responsible for the battery acted under the control of Washington County. Hillsboro Obj. and Mot. [367] at 8. In support of this argument, Hillsboro cites the Master Mutual Law Enforcement Assistance Agreement ("the Agreement") between Hillsboro and Washington County. *Id.* at 7. The Agreement allocates responsibility for liability suits in accordance with section 190.476 of the Oregon Revised Statutes. *Id.* Section 190.476 is a statute allocating liability arising out of the exercise of authority under mutual law enforcement agreements between Oregon and the states of Washington, Idaho, and California. In agreements between Oregon and these neighboring states, section 190.476 assigns liability for claims arising out of an officer's acts to the agency that employs the officer, except when the officer acts under the

control and direction of another agency. Therefore, under the Agreement between Washington County and Hillsboro, liability for claims against Hillsboro's officer acting under the direction of Washington County is allocated to Washington County.

But the allocation of liability between Defendants does not affect the number of public bodies involved in this case. At most, the Agreement affects indemnification between the parties, which is not an issue presently before me. I have previously found that the claims in this case were properly brought against both Hillsboro and Washington County. Therefore, the limitations imposed by the OTCA apply separately to each defendant.

    iii.    <u>The Number of "Accidents or Occurrences"</u>

The OTCA limits apply to claims that "[a]rise out of a single accident or occurrence." Or. Rev. Stat. § 30.272(1)(c). If the tortious acts of Defendants constitute more than one "accident or occurrence," each one is limited separately. Before I issued my October 11, 2018, Opinion and Order directing Plaintiffs to make an election of remedies, Plaintiffs argued that there were two accidents or occurrences in this case, one arising from the battery and one arising from negligence. Pls.' Mem. [392] at 22. For the reasons set forth in my October 11, 2018, Opinion and Order, I found that Plaintiffs had only proven one harm and could not recover on both the battery and negligence theories. But, because the number of accidents or occurrences under the OTCA does not necessarily follow from the number of harms that were proven at trial, I address Plaintiffs' argument that there were two accidents or occurrences even though I required Plaintiffs to elect only one remedy.

To show that the shooting in this case constituted two accidents or occurrences, Plaintiffs rely on *Wright v. Turner*, 322 P.3d 476 (Or. 2014) (en banc). In *Wright*, the Oregon Supreme Court analyzed an insurance statute to determine the meaning of the phrase "any one accident."

10 – OPINION AND ORDER

*Id.* at 479. The court determined that more than one accident occurs when an initial event is interrupted in some way "such as by time, distance, cause, or a combination of the three." *Id.* at 486. But the court also stated that neither the number of tortfeasors nor the number of causes necessarily determine the number of accidents. *Id.* at 485. Multiple causes may coalesce to result in one accident. *Id.* The essential element in *Wright*'s definition of separate accidents is whether there was an uninterrupted chain of events.

Although *Wright* addressed the definition of "any one accident" in an insurance statute rather than the OTCA, the court's analysis was not limited to interpreting that term in the context of insurance law. *See Wright*, 322 P.3d at 484–85 (discussing the concepts of causation and the number of accidents in the context of negligence and products liability). In addition, the parties have not provided any contrary authority on this issue. Therefore, I accept Plaintiffs' argument that *Wright*'s definition of "any one accident" can be applied to the facts of this case.

I have previously determined that Plaintiffs failed to identify any appreciable separation in time or location between the shots that would allow the jury to separate the harm attributable to negligence from the harm attributable to battery. Order and Opinion [447] at 9–10. This logic applies with equal force if only the battery is considered. There was no interruption in the shooting that injured Mr. Flores-Haro. Therefore, applying *Wright*, I find that the shooting was one accident or occurrence for the purpose of determining the number of OTCA limits that apply in this case.

D. The OTCA's Limit is Quantitatively Substantial

As discussed above, applying the OTCA limits to the jury's award in this case does not offend the remedy clause of the Oregon Constitution so long as the resulting award is "substantial." *See supra* Section A. Because I have found that *Horton* and *Hale* establish that

the legislature engaged in an acceptable quid pro quo when limiting recoveries under the OTCA, I now assess whether the limit imposed by the OTCA is quantitatively substantial as applied in this case. If the ratio of the OTCA limit to the jury's award is within the range of values determined to be substantial by the Oregon Supreme Court, then application of the OTCA limits to the jury award in this case is permissible under the Oregon Constitution.

As discussed above, applying the OTCA to the jury's award involves determining several variables. The overall limit depends on whether the state limit or local public body limit applies, whether separate limits apply to the City of Hillsboro and Washington County, and whether the tortious conduct in this case constituted more than one "accident or occurrence." For the reasons stated above, I have determined that the local public body limit applies to both defendants, that the limit applies separately to each defendant, and that the tortious conduct in this case constituted only one accident or occurrence. Because the shooting occurred in March 2012, the applicable OTCA limit is $566,700. Or. Rev. Stat. § 30.272(2)(c). Since this limit is applied separately to Hillsboro and Washington County, Plaintiffs' total recovery is limited to $1,133,400.

In order to determine whether $1,133,400 is a substantial award, I must first determine whether to compare that amount to the original jury award ($5,110,000) or to the amount remaining after Plaintiffs' remittitur and election of remedies ($1,498,007). In either case, the ratio—either 22% or 76%—is within the range of acceptable values, as determined by the Oregon Supreme Court in *Horton*, *Hale*, and *Howell*. Because the remittitur and election of remedies were required due to the jury's award in excess of the economic damages and harm proven at trial, I find that the OTCA limitation should be compared to the amount of damages after Plaintiffs' remittitur and election of remedies. The resulting ratio between the award after
12 – OPINION AND ORDER

applying the OTCA limits and the damages permissibly awarded by the jury is 76%, which is three times the ratio found to be "substantial" in *Horton*. Therefore, I find that Plaintiffs will receive a substantial recovery if the OTCA limits are applied to the jury's award in this case.

## CONCLUSION

For the reasons stated above, I find that limitation of the jury's award in accordance with the Oregon Tort Claims Act does not violate the Oregon Constitution in this case. Therefore, because Plaintiffs' battery claim is governed by section 30.272 of the Oregon Revised Statutes, Plaintiffs are entitled to recover $1,133,400 from Defendants.

IT IS SO ORDERED.

DATED this 1st day of January, 2019.

MICHAEL W. MOSMAN
Chief United States District Judge

13 – OPINION AND ORDER